184 386
201 391
201 393

## Estate of James H. Hays, deceased. Appeal of Agnes Wylie.

*Will—Trust and trustees—Separate use trust.*

Testator gave the legal title to the residue of his estate to his executors who were also trustees for his daughters, and directed that the estate should be kept together for ten years after his death, during which time his executors were to collect the income, divide it into eleven parts and pay the daughters one share each, "for their sole and separate use, and shall be paid into their own hands respectively upon their sole and separate receipt therefor." At the end of ten years there was to be a "complete partition" made of all his estate into eleven parts, and the executors were directed to hold the shares of the daughters after the division, upon

the same trust and with the same power of control as they held the estate before division. The trust was to continue for the life of each of the daughters and the minority of the children she might leave to survive her. The trustees were given entire business management and direction of each of the shares, but any daughter could negative a sale of any part of the real estate included in her share. *Held,* (1) that the daughters took a life estate, the legal title to which was placed in the trustees upon an active trust created for the sole and separate use of each of them during life, with a limitation of the fee after their death; (2) that the direction for a "complete partition" meant a division from which nothing should be omitted, and not a division which would vest a fee simple title in each of the daughters, discharged from the trust.

Argued Nov. 8, 1897. Appeal, No. 179, Oct. T., 1897, by Agnes Wylie, from decree of O. C. Allegheny Co., June T., 1893, No. 7, dismissing petition for partition. Before GREEN, WILLIAMS, MCCOLLUM, DEAN and FELL, JJ. Affirmed.

Petition for partition.

The petitioner, Agnes Wylie, was the daughter of James H. Hays, the testator, who died on March 30, 1876, leaving a will, the material portions of which were as follows:

"I bequeath to my beloved wife, Mary, in absolute property, my household furniture, and all other movable personal property ordinarily used about my dwelling house.

"I devise and bequeath the residue and remainder of my estate, real, personal and mixed, to my sons, Henry Blake and John Shoenberger Hays, in trust, nevertheless, for the following purposes:

[Here follow provisions for his widow]:

"Third. Subject to the foregoing provisions, my executors, for and during the period of ten years after my decease, shall manage, control and lease all my estate, real, personal and mixed, and receive the rents, issues, incomes and profits therefrom and thereout, and shall, during the period aforesaid, have and possess full power and authority to grant for such periods of time as they may think best, leases of my coal, together with all such incidental privileges or easements, through or upon my land, as may be reasonably necessary for efficiently mining, removing and transporting said coal to market. The net annual income and profits arising out of the execution of the last preceding clause, after all my debts and the annuity in favor of

said wife shall have been paid, or the payment thereof duly provided for, shall be divided annually into eleven shares and distributed in absolute property to and amongst my children and grandchild, John McClurg Hays, in severalty, in manner following, namely: To Henry Blake Hays, two shares; John Shoenberger Hays, two shares; John McClurg Hays, one share; my daughters, Annie E. Bughman, Mary J. Wilson, Josephine Willock, Emeline Davis, Sarah Watson and Agnes, [the petitioner] one share each. The shares allotted as aforesaid to my said daughters, shall be for their sole and separate use, and shall be paid into their own hands respectively, upon their own sole receipt therefor. The share of the said John McClurg Hays shall not vest in him absolutely, as heretofore declared, but the same shall be retained by my said executors, in trust, to pay thereout, in the first place, to the mother of the said John, the sum of eight hundred dollars annually, in equal semi-annual payments, so long as she remains the widow of my deceased son, James, and to apply an adequate portion of said share, in the maintenance and education of the said John, directly or through the medium of his lawfully appointed guardian, in the discretion of my said executors; and to invest the unexpended surplus, if any, and improve the same as an accumulation fund, varying the investments from time to time in their discretion, and so much of the same as shall not have been applied or expended as aforesaid (but continuing subject to the provisions for said daughter-in-law), shall in the event of said John's attainment of twenty-one years become his absolute property; but in the event of his death in his minority, without leaving issue, the same shall go in absolute property, subject as aforesaid, to my sons, John Shoenberger Hays and Henry Blake Hays, in equal shares. The entire of my personal estate remaining undisposed of at the expiration of the aforesaid period of ten years, shall be retained by my said executors to their own use, and in trust for my said daughters and grandson respectively, in the proportions aforesaid, but subject to all the testamentary charges hereinbefore created. And I direct that the shares of my said daughters shall be put at interest or in safe and reliable stocks, and only the income or profits thereof paid to them or any of them during their natural lives, in the manner heretofore prescribed, in respect to the income from my

entire estate, real and personal, and, after their decease, to their lawful issue during their minority, and failing such, or in the case of the death of such issue in their minority, then to my said surviving daughters, in equal shares, subject to the same trust limitations, and the same course of succession as their original shares; the issue of my deceased daughters taking in all cases by way of representation, and not according to their number. The said share of my grandson shall be subject to the same trust, limitations and uses, and shall go in succession as hereinbefore prescribed in respect of his share of the income from my entire estate. As touching and concerning the body of my real estate, including therein all leases of coal made either by myself or my executor, unconverted or undisposed of at the expiration of said period of 10 years, my will is that the same shall consist of 11 shares, and shall continue in my said executors to the uses and upon the trusts following, viz: To my sons, John S. and Henry B. Hays equally, four shares for and during their natural lives, and at their deaths to their issue by representation; but, and if either of my said sons shall die, failing issue or leaving issue, and said issue shall die in their minority failing issue, then over to the survivor of them upon the same limitations as before expressed in respect to the original direct devises to my said sons respectively. To have and to hold one of said shares in trust and to use of my said grandson, John McClurg Hays, for the term of his natural life, to possess, control and manage the same according to their discretion, and, during the minority of said John, applying the net income or profits hereof and thereout in the same manner hereinbefore expressed, in respect to the income from his share of my personal property and of my real estate, during the aforesaid period of 10 years; and at and after the attainment of his majority to pay over to him the net income, subject to the provisions in favor of his mother; and in like manner to manage and control and to pay over the net proceeds or income to the issue of the said John living at his death, during their minority; but, and if said John shall die failing issue, or leaving issue, and said issue shall die in their minority failing issue, then said share shall go over to my said sons, John S. and Henry B., or the survivor of them, upon the same limitations as herein expressed in respect to the primary and direct devises to my said sons.

"To have and to hold the remainder of said shares in trust for and to the use of my said six daughters equally, with full power and authority to control and manage the same in their discretion, accounting and paying over to them respectively, from time to time, during their respective lives, for their sole and separate use, the net proceeds, profits and income thereof, in like manner as hereinbefore expressed in respect to their shares in the income of my entire real and personal estate; and upon the decease of any of my said daughters leaving issue, the trust to be continued in the same manner for the benefit of said issue during their minority, and to be executed and performed in like manner, but more especially in the application of the trust income as hereinbefore provided in respect of the income of my grandson, John McClurg, during his minority. But, and if any of my said daughters shall die without leaving issue, or if leaving issue said issue shall die in their minority failing issue, the share of such daughter shall go to her surviving sisters equally, but upon the same trust limitations as are herein expressed and provided in respect to the trusts firstly and directly created in their favor.

"In the execution of the trusts herein conferred upon my said executors, they shall have full power to create mining or other leases, for such term or terms, and for such rent or rents as they shall in their discretion judge best, and shall also have full power, with the consent in writing of my said daughters, to sell and convey any portion of their shares in my said real estate, holding the proceeds upon the same trust limitations, and to the same uses as the land itself.

"I authorize and empower my said executors in their discretion, after my said grandson shall have attained his majority, with his consent in writing, to sell and convey his share in my real estate or any portion thereof, and to hold the proceeds upon the same trust limitations, and to the same uses as are hereinbefore expressed in respect to the land itself.

"And as touching the shares of my sons, John S. and Henry B. Hays, in case either of them shall desire to sell his or their shares, they shall appoint, subject to the approval of the orphans' court of Allegheny county, a competent person or persons, who, when so appointed and constituted, shall, with the consent in writing of my said sons, or either of them, sell and convey said

shares, or any portion of them, retaining and holding the net proceeds, upon the same limitations as the realty, with power to invest under the direction of my said sons, and to pay over to them respectively, the net income or profit thereof, during their natural lives. The powers and authority herein granted in respect to the sale and conveyance of my real estate for conversion merely, shall not be exercised until after the expiration of the aforesaid period of 10 years, nor until after the same shall have been parted and divided to and amongst my children and their devisees, as hereinafter provided.

"It is my will, and I so declare, that my real estate sold under the powers of sale herein contained, whether in course of administration, or for the purpose of conversion only, or in the course and for the purpose of partition and distribution to and amongst my children and devisees, shall be discharged of and from all liens or incumbrances created thereby; neither shall the purchasers thereof be bound to see to the application of the purchase money. And it is further my will, and I hereby direct, that at the expiration of the aforesaid period of 10 years, and as soon thereafter as shall be reasonably practicable, complete partition shall be made of all my real estate remaining unsold, including therein all mining leases or licenses, to and amongst my children and devisees, and to that end I direct that my said executor shall divide and lay out said real estate, according to such plan as they shall in their discretion determine on as best, taking care to provide for and create all such rights of way and mining, or other servitudes and easements, upon, through or in said real estate, or any part thereof, as they may deem reasonably necessary to the mining, hauling and transporting to market any stone, coal, or other minerals contained in said real estate, exercising herein all the power that I could exercise myself if living; and when the division and plan aforesaid shall be completed, I direct that all my said real estate shall be appraised, agreeably to such division and plan, by three competent appraisers, one to be chosen by my said sons and grandson, or a majority of them, and one by my said daughters, or a majority of them, and the appraisers so chosen to select the third. But on failure of my sons or daughters to choose as aforesaid, the selection shall be referred to the president judge of the court of common pleas of Allegheny county, as also the

selection of the third appraiser in case the two chosen in the first place shall be unable to agree as to the third. On the completion of the division, plan and appraisement as aforesaid, my said executors shall appoint a time and place where the same may be examined and inspected by the said devisees, giving them reasonable notice of said appointment. My said sons and grandson, respectively, shall have the privilege of taking, at the aforesaid appraisement, any portion or portions of my real estate not exceeding in the whole their respective shares in my entire estate, real and personal, exercising as between themselves the said privilege of choice in the manner following, to wit: John S. first, Henry B. second, and my grandson, John McClurg Hays, third, choosing alternately, in said order, one parcel or portion, and so on successively, until they have severally taken their entire shares in my whole estate. And after my said sons shall have exercised their privilege of choice, as aforesaid, then my said daughters shall severally, in order of seniority, in manner as aforesaid, have the like privilege as my said sons and grandson of taking any of the remaining portions of my real estate to the extent of their respective shares in my whole estate. Such portion or portions as none of my children and devisees shall take in the manner aforesaid, shall be sold by my said executors at public or private sale, upon such terms, in respect to credit and price, as my said executors can obtain therefor. And in case such sales be for less than the appraised value, my children and devisees who have taken at the appraisement shall be charged with such sums as may be necessary to effect the division and distribution of my entire estate, in the proportions hereinbefore expressed to and amongst my children and devisees.

"It is my will, and I direct that the net proceeds of any of my real estate sold under powers herein granted, for conversion only, or for conversion and distribution, shall stand for the realty, and be subject to like limitations, trusts and uses.

"And it is my will, and I direct that all accumulations of income or profits during the minority of any life tenant or beneficiary subject to the provisions for maintenance and education, shall go in succession in like manner as the body of the devise or bequest.

"And it is further my will, and I direct, that the succession

of my estate, on the death of any life tenant or beneficiary, shall be according to representation, and not according to number."

The court dismissed the petition.

*Error assigned* was in dismissing the petition.

*James Fitzsimmons*, with him *J. Guy Bassett*, for appellant. —The plain indication is that the word "issue" refers to the heirs of the first taker, and in default of such, then over to the surviving sister of the first taker. The word "issue" as used by the testator in his will, indicates that it was limited to the issue or heirs of the first taker, and in default of such issue then over. It was an indefinite failure of issue as issue may represent the children or heirs of the first taker to a remote degree; and under the rule in Shelley's Case, if even the first taker should take an estate tail, then under the terms of the act of 1855, it would vest a fee simple in the first taker, or at the most, a fee tail which could be barred in the usual way and vest an absolute fee in the appellant: Grimes v. Shirk, 169 Pa. 74; Angle v. Brosius, 43 Pa. 187; Kleppner v. Laverty, 70 Pa. 70; Hoff's Estate, 147 Pa. 636; Vaughan v. Dickes, 20 Pa. 509; Eichelberger v. Barnitz, 9 Watts, 447; Lawrence v. Lawrence, 105 Pa. 339; Hackney v. Tracy, 137 Pa. 53; Ogden's App., 70 Pa. 501; Yarnall's App., 70 Pa. 342; Taylor v. Taylor, 63 Pa. 481; Haldeman v. Haldeman, 40 Pa. 29; Physick's Appeal, 50 Pa. 128; Nice's Appeal, 50 Pa. 143.

The design of the testator was that these partition proceedings should vest a fee simple title in the parties taking purparts thereunder: Shaw v. Spencer, 100 Mass. 382; Daniel v. Whartenby, 17 Wall. (U. S.) 639; 27 Am. & Eng. Ency. of Law, 67; Irving v. DeKay, 9 Paige, 521; How v. Waldron, 98 Mass. 281.

*Thomas C. Lazear* and *Charles P. Orr*, for appellee, were not heard, but cited in their printed brief, Barnett's App., 46 Pa. 392; People's Savings Bank v. Denig, 131 Pa. 241; Miller's Est., 145 Pa. 561; Wallace v. Denig, 152 Pa. 251; Taylor v. Taylor, 63 Pa. 481.

OPINION BY MR. JUSTICE WILLIAMS, January 3, 1898:

The questions presented by this record are ruled by Barnett's

Appeal, 46 Pa. 392. The will of James H. Hays was carefully prepared. He gave to Mrs. Wylie, the appellant, as to his other daughters, an equitable life estate, limited to her sole and separate use, in one eleventh part of his real estate. The legal title was distinctly given to his executors, who were also trustees for his daughters, upon a well defined trust which was to continue beyond the lives of the cestuis que trust. The estate was large, embracing more than a quarter of a million of dollars in personalty, and between two and three millions in real estate. Much of the real estate consisted of coal lands. His two sons, whom he named as executors, had been associated with him in his coal operations, and knew the general plan upon which his purchases had been conducted, and the relations of the several tracts to each other. To afford his executors time to make themselves familiar with the situation of all his investments and arrange for the division of his estate to the best advantage for all his children, he directed that the estate should be kept together for ten years after his death, during which time his executors were to collect the income from both real and personal estate, divide it into eleven parts and pay to the distributees named in his will. This they were directed to pay in these words, "The net annual income and profits shall be divided into eleven shares and distributed in absolute property." Each of the daughters was to receive one share, which was to be paid her "for her sole and separate use, and shall be paid into their own hands respectively upon their own sole and separate receipt therefor." These words are apt and appropriate for the creation of a sole and separate use trust for each of the daughters in the income from the undivided estate, and are substantially repeated as to the shares of each in the estate after its division at the end of ten years. The executors were directed to hold the shares of the daughters after the division, upon the same trust, and with the same power of control as they held the estate before division, pay over to each the net income derived from the share allotted to her during her life, for her separate use, and upon her sole and separate receipt, just as the income from the undivided estate was to be paid. The duration of the trust so created was for the life of each of the cestuis que trust and the minority of the children she might leave to survive her. The duties of the trustees were not dry and technical, but ac-

tive and continuous; involving the entire business management and direction of the shares of each of the six daughters. The will gave them a negative upon the action of the trustees in the one case of a proposed sale of any part of the real estate included in the share of either of the daughters. She could say when such a sale was proposed to her, "No, I do not wish this piece of real estate sold," and the power of the trustees to sell was thereby at an end. The appellant lays great stress upon the words used by the testator in directing the division of his estate after the end of ten years. He says, that at the end of that time he wishes "a complete partition to be made of all his estate into eleven parts." This means a division from which nothing shall be omitted. He wished the division complete in the sense of including all that he left behind him. It was not a direction that the partition should be conducted with a view to vest a title in fee simple in each of his children discharged from the trust. He gave his daughters a title which he defined with great care. It was a life estate, the legal title to which was placed in trustees upon an active trust created for the sole and separate use of each of them during life, with a limitation of the fee after their death. This was evidently the view entertained by the orphans' court, and amply justified the dismissal of appellant's petition.

The assignments of error are overruled and the decree is affirmed.