## Lisle's Estate.

*Taxation—Collateral inheritance tax—Decedent's estates—Rules of property—Judicial decision.*

In April, 1848, testatrix devised her realty in equal shares to her four children, naming them, "their heirs and assigns." She further directed as follows : "I also request my children in making their will to give the property they receive by this will, unless the strongest reasons should urge them to the contrary, to the direct heirs of my husband and myself." Testatrix died in the same year. In Coates's App., 2 Pa. 129 (1845), it was decided that an absolute estate given by will was reduced to a life estate with remainder in trust by succeeding word of desire, expectation, or confidence, both as to realty and to personalty. Pennock's Appeal, 20 Pa. 268, decided in 1853, overruled Coates's Appeal. As three of the children died in succession, each devised his or her portion to the survivors. When the last survivor died she devised the whole of the real estate to her niece and nephews. *Held* (1), that the last survivor held three fourths of the estate under devises of the other donees, absolutely, and only one fourth under the limitations of the original will ; (2) that the commonwealth was entitled to the collateral tax on the three fourths interest.

Argued Oct. 22, 1902. Appeal, No. 129, Oct. T., 1902, by Robert P. Lisle, from order of O. C. Phila. Co., directing payment of collateral tax in estate of Ellen M. Lisle, deceased.

Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and
W. D. PORTER, JJ.   Affirmed.

Petition for order to pay collateral tax.

The petition was as follows:

The petition of Jacob Singer, register of wills, respectfully
represents:

Margaret Lisle died in 1848, leaving her last will and testament, dated April 29, 1848, duly admitted to probate in the
office of the register of wills of Philadelphia county, on July 19,
1848, wherein she devised her residuary estate, inter alia, in
item three of said will, a lot or piece of ground at Twenty-
ninth and Master streets, Philadelphia, Pa., of seven and one
quarter acres, more or less, as follows:

"All the rest, residue and remainder of my estate real and
personal and the estate real and personal of my late husband,
I give, devise and bequeath to my children, Nancy, wife of
Dr. William Ashmead, Ellen, Sarah and James W. Lisle, in
equal portions share and share alike, to have and to hold to
them, the said Nancy, wife of Dr. William Ashmead, Ellen,
Sarah and James W. Lisle, their heirs and assigns."

And in item five she provided as follows:

"I also request my children in making their wills to give
the property they receive by this will, unless the strongest
reasons should urge them to the contrary, to the direct heirs of
my husband and myself."

James W. Lisle died in 1852, and by his will, duly recorded
in the office of the register of wills, for Philadelphia county,
in will book No. 30, page 13, devised all his estate to his
sisters, Ellen M. Lisle and Sarah M. Lisle, in fee simple.

Nancy, wife of Dr. William Ashmead, died on January 30,
1889, and by her will, duly recorded in the said register's
office, in will book No. 148, page 101, after a few personal
legacies, devised all the rest of her estate to her sisters, Ellen
M. Lisle and Sarah M. Lisle, in fee simple.

Sarah M. Lisle died on June 26, 1890, and by her will, duly
recorded in the said register's office, in will book No. 160,
page 591, devised all her estate to her sister, Ellen M. Lisle,
in fee simple.

Ellen M. Lisle, the last surviving child of the said Margaret

Lisle, died on December 10, 1899, leaving her last will and testament, dated December 21, 1889, duly admitted to probate in Philadelphia county, wherein she provided as follows:

"VI. My mother's will is as follows: 'I also request my children in making their wills to give the property they received by this will unless the strongest reasons should urge them to the contrary to the direct heirs of my husband and myself.' By virtue of this power, as there are no strongest reasons to the contrary, as also by virtue of any ownership in my own right, I hereby give, devise and bequeath in case the said Sarah M. should predecease me to my nephews Robert P. Lisle and R. Mason Lisle, and my niece, Meta M. Lisle, in fee as tenants in common all the rest, residue and remainder of my property, real and personal, in the case of the death of either of them, their issue to stand in their parents' place, if one, solely, if more than one, share and share alike, the share of any such issue to be held in a trust similar to that provided for the said John Lisle, limiting the time for the existence of the trust to such period as will not transgress the rule against perpetuities with the right of the parent to appoint the trustee. The properties inherited from my mother are the following: Richmond, Va., corner of Main and Fourteenth streets, in Philadelphia, Nos. 2101 and 2103 Park Avenue, and 2104, 2110, 2112, 2116, 2118, 2122 and 2124 North Thirteenth street, and Nos. 2911 to 2937, inclusive, Girard avenue."

On March 16, 1886, the piece of ground at Twenty-ninth and Master streets, mentioned above as part of the residuary estate of Margaret Lisle, was sold by Nancy, wife of Dr. William Ashmead, Ellen M. and Sarah M. Lisle, as owners in fee, to Peter A. B. Widener and William L. Elkins, for the sum of $100,000, the indenture of conveyance thereof being duly recorded in the office of the recorder of deeds, for Philadelphia county, in deed book G. G. P. No. 150, page 220, etc., and on the same date, to wit: March 16, 1886, there was purchased by the said Ellen M. and Sarah M. Lisle, two of the above-named grantors, from the said Peter A. B. Widener and William L. Elkins, for the sum of $100,000, the properties herein referred to in the will of Ellen M. Lisle as inherited from her mother, to wit: Nos. 2101 and 2103 Park avenue, and 2104, 2110, 2112, 2116, 2118, 2122 and 2124 North Thirteenth street, and 2911

to 2937, inclusive, Girard avenue ; the indenture of conveyance thereof, absolutely and in fee simple to said Ellen M. and Sarah M. Lisle, being duly recorded in the office of the recorder of deeds, for Philadelphia county, in deed book G. G. P. No. 138, page 420, etc.

The above recited transactions were in point of fact an exchange of real estate between the said parties.

The above mentioned real estate of the said Ellen M. Lisle, deceased, situate in the city of Philadelphia, has been appraised for the purposes of collateral inheritance tax due to the commonwealth of Pennsylvania under the laws thereof, at the sum of $54,747, and the amount of tax due thereon is $2,737.

The answer of Robert P. Lisle and R. Mason Lisle, executors of the estate of Ellen M. Lisle, deceased, was as follows :

1. We admit all the averments of facts contained in the said petition.

2. The matters of fact contained in the said petition are not sufficient in law to entitle the said petitioner to payment of the said collateral inheritance tax, as prayed in the said petition.

Wherefore the said Robert P. Lisle and R. Mason Lisle do demur to the said petition and pray the judgment of the court thereon and that the said petition may be dismissed.

PENROSE, J., filed the following opinion :

The transmission of real estate is governed by established principles, which, as they apply to all conveyances or assurances, are called rules of property—a rule, as we are told, by Blackstone, being " permanent, uniform and universal," and not confined in its operation to individual cases.   Such, for example, are the rules that a fee cannot be created by deed without the use of the word heirs, that a contingent remainder must be supported by a prior estate of freehold, that the exercise of a power of appointment by a tenant for life does not make the lands assets for the payment of his debts (in Pennsylvania, though it is otherwise in England), that a will, in the absence of evidence of contrary intent, passes lands acquired after its execution, etc. These rules may have their origin in the common law, or, as in the case of after-acquired lands by a testator, be created by statute ; but in either case, until changed by statute or by decision of the court of last resort, they determine the effect of

every species of conveyance, including wills devising real estate, made prior to such change or repeal. Illustrations of this are furnished by the cases of wills of persons dying before the passage of the act of 1833 as to after-acquired real estate (Mullock v. Souder, 5 W. & S. 198), or of execution of wills by mark, under the act of 1848, instead of by signature (Greenough v. Greenough, 1 Jones, 489; McCarty v. Hoffman, 11 Harris, 507); and whether the rule is fixed by act of legislature or ascertained by the court, whose decisions are equally binding upon the citizen, is immaterial. As was said by Lord KENYON, in Doe v. Allen, 8 Term Rep. 497: "The maxim misera est servitus ubi jus est vagum et incertum applies with peculiar force to questions respecting real property . . . . and if by means of new light occurring to new judges, all that which was supposed to be law by the wisdom of our ancestors is to be swept away at a time when the particular limitations are to take effect, mischievous indeed will be the consequences to the public." So in Goodtitle v. Otway, 7 Term Rep. 399, 420, it was said, " Stare decisis is a safe and prudent maxim : then it is every man's fault if he does not take such advice as will be sure to lead him right, and the persons advising will have the means of doing it; but if everything is set afloat again, the ablest conveyancers may not be able to direct him."

In Coates's Appeal, 2 Barr, 129, decided in January, 1845, it was solemnly declared, following the English cases, and especially Wright v. Atkyns, 17 Vesey, 255, that an absolute estate given by will was reduced to a life estate with remainder in trust by succeeding words of desire, expectation or confidence,— whether the subject be real estate, as in Wright v. Atkyns, or personal. This was reiterated in Jackson v. Jackson, 2 Barr, 212, 214, 215, decided in March of the same year.

The rule of property having been thus enunciated, Mrs. Lisle executed her will in April, 1848, devising her realty, in equal shares, to her four children, Nancy, Ellen, Sarah and James, "their heirs and assigns," providing, however, as in Coates's Appeal and Wright v. Atkyns, as follows : " I also request my children in making their wills to give the property they receive by this will, unless the strongest reasons should urge them to the contrary, to the direct heirs of my husband and myself." She died in July, of the same year, and her real estate, there-

fore, under the law then governing, vested in her four children for life, with remainder to the "direct heirs" of her husband and herself, subject to the power of appointment and the provision with regard to the "strongest reasons," etc.; this being the effect whether the words of qualification in the will were to be regarded as mandatory, as in Burt v. Herron, 16 P. F. Smith, 400, and Kennedy's Appeal, 32 P. F. Smith, 163, or merely precatory, as in Coates's Appeal.

That the rights thus vested could not be divested by the subsequent ruling of the Supreme Court in Pennock's Appeal, 8 Harris, 268, decided in 1853—five years after the death of the testatrix—seems clear from the principles which have been referred to. See also Peppard v. Deal, 9 Barr, 142, Shinkle v. Crock, 5 Harris, 159, Buffington v. Summit Branch R. R. Co., 24 P. F. Smith, 162, and Butler v. Van Wyck, 1 Hill, 438, cited by counsel for the respondents. Pennock's Estate declared that words in a will, following an absolute gift, expressing desire, recommendation and confidence, do not, per se, reduce the original gift, or create a trust in favor of the persons commended; and this is now the rule of property on the subject. But it does not change rights which vested before the rule as declared in Coates's Appeal was rescinded, or affect the interpretation of wills based upon it and becoming operative as conveyances in the meantime.

The estate, however, having thus passed to the four children of Mrs. Lisle, [when James, in 1852, in the exercise of his power, devised his fourth to his sisters, Ellen and Sarah, in fee, they held, to that extent, absolutely. So in 1889, when Nancy (Mrs. Ashmead) devised her share to them in fee, they acquired in like manner another fourth; and when Sarah devised her estate, including what she had thus become the absolute owner of, to Ellen, in June, 1890, the latter held three fourths under devises or appointments of the other donees, absolutely, and only one fourth under the limitations of the original will.

It follows, therefore, that in 1899, when her will devised the real estate to her niece and nephews, they took, to the extent of three fourths, by virtue of her absolute ownership, subject to the payment of collateral inheritance tax, the other fourth passing under her power of appointment to them as lineal descendants of the original testatrix not being liable to such payment.

Of course, the property acquired by the exchange referred to in the petition and answer took the place of that previously held, and became subject to all its incidents so far as concerns questions of title or trust.

We cannot agree to the suggestion that the determination of the question as to who were to take as " direct heirs " was intended by the testatrix to remain open until the death of the last survivor of her four children.    As they died, successively, the others were such direct heirs, and the successive appointments to them—the validity of which seems never to have been doubted—show that this was the contemporaneous and general understanding of the family.

It may. be suggested, in conclusion, that the executors of Ellen's will, qua executors, are not the proper parties.   It is true the act of 1887 provides for citation to executors, but it can scarcely have been intended that this should apply to cases of devises of real estate with which they have nothing to do; but the tax is made a lien on the real estate, and the devisees can be brought in under the principle of Detweiler's Appeal, 8 Wright, 243.   We therefore grant leave to amend the petition accordingly; after "which, if no sufficient cause be shown to the contrary, our decree will be in favor of the commonwealth to the extent of the allowance of tax on three fourths of the amount of the clear value of the property.

And now, to wit: December 27, 1901, the petition in the above case having been duly amended, by decree dated November 16, 1901, the court orders and directs Robert P. Lisle, R. Mason Lisle, and Meta M. Lisle to pay to the commonwealth of Pennsylvania the sum of $2,053.01, being the allowance of collateral inheritance tax on three fourths of the amount of the clear value of the property, with lawful interest from December 10, 1900.

*Error assigned* was the decree of the court.

*R. Mason Lisle,* for appellant.—The appointment in fee simple as tenants in common of the real estate of Margaret Lisle, by the will of the latter's last surviving child, Ellen M. Lisle, was a valid exercise of the power in the will of Margaret Lisle and, therefore, there is no collateral inheritance tax due

262, (1903).]      Arguments—Opinion of the Court.

the commonwealth of Pennsylvania, upon the said real estate, as Robert P. Lisle, R. Mason Lisle and Meta M. Lisle are the lineal descendants of Margaret Lisle: Walker v. Dunshee, 38 Pa. 430, 438; Kerr v. Verner, 66 Pa. 326; Jones v. Cable, 114 Pa. 586; Estate of Hart, 46 Legal Int. 454; Perry on Trusts, sec. 835.

*Emanuel Furth*, with him *Clayton H. Kochersperger*, for appellee.—The whole estate of Ellen M. Lisle, which she devised and bequeathed to collateral heirs, is liable for the payment of the inheritance tax, because all the estate she disposed of, she owned during her life, absolutely and in fee simple, free from any trust.

The devisees under the will of Margaret Lisle, deceased, took an estate in fee simple. Heretofore, they took as tenants in common, and not as joint tenants, and the award of the court below as to three fourths of the tax must in any event be sustained, because the only error committed was the failure to award the appellee the whole amount of the tax: Sturm v. Sawyer, 2 Pa. Superior Ct. 254; Seely v. Seely, 44 Pa. 434.

OPINION BY ORLADY, J., February 11, 1903:

The question involved in this case is fully considered in the opinion filed by Judge PENROSE, and the decree entered is in accord with the views of this court for the reasons given therein.

The assignments of error are overruled and the decree is affirmed.