# Commonwealth, Appellant, *v.* Thomas.

*Trusts and trustees—Spendthrift trust—Attachment execution —Act of April 15, 1913, P. L. 72.*

An attachment execution issued under a judgment entered on a bond in proceedings for the support of children, cannot attach income which has accrued since the passage of the Act of April 15, 1913, P. L. 72, on a strict spendthrift trust created by will which became operative in 1910.

Argued Oct. 9, 1916. .Appeal, No. 407, Oct. T., 1915, by plaintiff, from order of C. P. No. 4, Philadelphia Co., June T., 1915, No. 4777, discharging rule for judgment on garnishment proceedings in case of Commonwealth v. Woodford H. Thomas and Fidelity Trust Company, Garnishee.    Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.    Affirmed.

Sur rule for judgment on answers to interrogatories.

From the record it appeared that the defendant was arrested by a warrant issued under the provisions of the Act of April 13, 1867, P. L. 78, and after a hearing before the magistrate was bound over for the Court of Quarter Sessions where, after hearing, he was ordered to pay $3 per week for the support of his two minor children on September 29, 1911, as of September Sessions A. D. 1911, and to give bond in the sum of $500 for the faithful performance of said order.

The bond was entered as a judgment against him in Court of Common Pleas No. 4, as June Term, 1915, No. 4777.

The defendant being in arrears in the sum of $267 an attachment execution was issued in accordance with the terms of the Act of April 15th, A. D. 1913, P. L. 72, amending the Act of 1867, supra, and the income in the hands of the Fidelity Trust Company, trustee of a spendthrift trust under the will of Elizabeth P. Hopple who died February 16, 1910, attached and the Fidelity Trust Company summoned as garnishee.

Section 17 of the will of Elizabeth P. Hopple, provides as follows:—

"Item: I give and bequeath unto the Fidelity Trust Company the sum of five thousand dollars ($5,000) in trust nevertheless, to invest the same and keep the same invested, to collect interest and income therefrom and after deducting charges and expenses to pay the net income therefrom arising, quarterly to my nephew, Woodford Hopple Thomas, for and during all the term of his natural life, upon his receipt only, the principal of said estate and income thereof not to be liable to or for his contracts or debts, or to execution or attachment at the suit of any creditor of Woodford Hopple Thomas, but to be absolutely free from the same, and the said Woodford Hopple Thomas to have no power to sell, assign or encumber either the principal or income of said bequest or to anticipate the income.    And further I authorize the

said trustee to pay to the said Woodford Hopple Thomas such part or portion of the principal of said sum as shall in the judgment and discretion of the said trustee be necessary or proper for the support and maintenance of the said Woodford Hopple Thomas, or in case of sickness or other emergency; my said trustee shall not be liable to any person or persons for the exercise or non exercise of the discretion so given by me, and said trustee shall not be called upon by any person to give any reason for the payment or non payment of any portion or all of the said sum to said Woodford Hopple Thomas, and the power and discretion so given to the said trustee shall not, under any circumstances, give said Woodford Hopple Thomas the right to demand said principal or any portion thereof, and from and immediately after the death of the said Woodford Hopple Thomas then to pay the said sum of five thousand dollars ($5,000) or such part thereof as shall remain in the hands of the said trustee unto such children as he shall leave surviving him."

*Error assigned* was the order of the court discharging the rule.

*Franklin E. Barr,* Assistant District Attorney, with him *Samuel P. Rotan,* District Attorney, for appellant, cited: Finnen's Est., 196 Pa. 72; Brearley School v. Ward, 201 N. Y. 358; Board of Charities v. Lockard, 198 Pa. 572; Decker v. Directors of the Poor, 120 Pa. 272.

*Wayne P. Rambo* and *Abraham M. Beitler,* with them *Francis C. Adler,* for appellee.

OPINION BY HEAD, J., December 18, 1916:

The able and elaborate briefs presented by counsel at bar would carry the discussion of the case before us much farther afield than we are required to go in order to determine the real question involved. Whilst that question

may be and has been viewed from many angles, it presents one fundamental aspect on which we conclude to rest our judgment. Briefly, the facts out of which the contention arises, are these.

Elizabeth P. Hopple died in 1910, having first made her last will, which was duly admitted to probate. In and by that will she gave to the Fidelity Trust Co. the sum of $5,000, in trust for these uses and purposes, viz: (a) to invest the same and keep it invested; (b) to pay the net income arising therefrom, quarterly to her nephew, "for and during the term of his natural life, upon his receipt only, the principal of said estate and the income thereof not to be liable to or for his debts or contracts or to execution or attachment at the suit of any creditor, but to be absolutely free from the same," &c. There was thus lawfully created by the testatrix not merely what is ordinarily called "a spendthrift trust" but what is accurately termed, in some of the cases, "a strict spendthrift trust." Not attempting to exercise any power save one which, for generations, the law had conclusively declared to be hers, she selected the object of her bounty and the hand which should continue to dispense it after her death. Her voice, speaking through the testament she made, with the full approval of the law of the land, is still as potential to direct the disposition of her own property, as it was when she was a living, moving human being. The selected trustee, the appellee, by accepting her bequest, made in the manner and form we have stated, solemnly pledged itself to manage and dispose of her property, placed in its hands, as she chose to give it and in no other way.

We cannot think that, in the construction of the Act of May 9, 1913, P. L. 72, a consideration of the character of the obligation of a husband and father to support his wife and children, should be controlling. The judgment against him, on which is founded the "writ of attachment execution" issued by the Court of Quarter Sessions, is a money judgment. It is hard to perceive

why, in attempting to collect that judgment, it should be held to rest on a different basis, from judgments in favor of the butcher, the baker or the tailor who had fed and clothed the wife and children of a recalcitrant husband and father, in discharge of the obligation primarily imposed by the law upon him. This is but a suggestion of the practical difficulty that would arise were we to follow the argument advanced along this line. But there is safer ground. In Thackara v. Mintzer, 100 Pa. 151, and Board of Charities v. Lockard, 198 Pa. 572, the Supreme Court expressly declined to give to the same argument here advanced, the effect we are now asked to deduce from it. And finally, as to this contention, the reason on which the decisions cited rest, forbids us to regard it as tenable. In the first case cited, Mr. Justice MERCUR said, "An unbroken line of cases from Fisher v. Taylor, 2 Rawle 33, down to 7 Norris 276, has settled the law in this Commonwealth, that a father may, by creating a trust in proper form, provide for a son without exposing his bounty to the debts or improvidence of the beneficiary......It is contended that the character of the debt in this case, on which the attachment issued, is not within the meaning of the testator's exemption." So it is argued here. "Whether the judgment be for a breach of contract or for a tort, matters not. The testator recognized no such distinction." In Board of Charities v. Lockard, supra, Mr. Justice POTTER, thus disposed of the line of argument we are now considering. "The general rule of law in Pennsylvania sustaining spendthrift trusts is admitted; but it is strongly urged, upon the ground of public policy, that an exception should be made in the case of a beneficiary having a wife and children dependent on him for support......The fund did not originate with the beneficiary, but the bequest was made by another who had the right to bestow his benefactions as he pleased," &c. In a word the underlying thought is the possession of the trustee is the possession of the testator, not of the beneficiary. Until, at the time and in the man-

ner provided in the will, the trustee has turned over to the beneficiary such sum as the testatrix has directed it to do, the property right in the fund, corpus and income, remains in the estate of the testatrix or her donee the trustee, and the ultimate beneficiary has no right in or control over it.   To hold otherwise would be, in effect, to rewrite the will of the testatrix.

Where is the warrant for the conclusion that the legislature, in enacting the Act of 1913, intended to coerce a trustee, under a strict spendthrift trust created long before the passage of the act, to dispose of the income of a bequest in a manner forbidden by the instrument creating the trust and providing the necessary funds to execute it?

Generally speaking, statutes are presumed to speak from the date of their enactment.   In the absence of a clear expression of a contrary intent the legislative will is to operate prospectively not retroactively.   We observe nothing in the Act of 1913 to compel us to adopt the conclusion it was the intention of the act to interfere with the operation of the trust, in the present case or in a like case, created lawfully, as we have said, long before the new enactment.

We are not therefore called upon to consider or determine the limitations, if any, of the legislative power in relation to strict spendthrift trusts created since the passage of the Act of 1913.   The question involved in the record before us does not compel such a decision and therefore does not properly invite a discussion of it. The orderly evolution of the law, the symmetry and strength of its well-knit structure will be best promoted by not attempting to dispose to-day of questions that will not arise until to-morrow.

We are all of opinion the learned court below was right in discharging the rule for judgment against the garnishee on its answers.

The order discharging the rule is affirmed.