## Weightman v. Weightman et al.

*Husband and wife—Desertion—Bill by wife to reach trust property held for husband—Acts of May 23, 1907, April 27, 1909, July 12, 1913, July 21, 1913, and May 10, 1921.*

1. The Municipal Court having, by the Act of July 12, 1913, § 11, P. L. 711, exclusive jurisdiction in all proceedings against husbands deserting or failing to support their wives, no certificate of the amount involved need be filed with a bill in equity filed in that court against a deserting husband under the Act of May 23, 1907, P. L. 27, as amended or supplemented by the Acts of April 27, 1909, P. L. 182, July 21, 1913, P. L. 867, and May 10, 1921, P. L. 434, for the purpose of reaching property held in trust for his benefit.

2. A bill in equity, filed in the Municipal Court by a deserted wife to reach property held in Pennsylvania in trust for the benefit of her husband, is good on demurrer, although it does not aver that the desertion took place in this Commonwealth or that either of the parties was domiciled therein prior to the desertion.

3. Although such a bill indicates that it was filed to reach a spendthrift trust, in accordance with the Act of May 10, 1921, P. L. 434, it is not demurrable in failing to aver that an award has been made or a decree entered against the husband before the filing of the bill.

4. The Act of May 10, 1921, P. L. 434, making spendthrift trust funds held for husbands subject to awards or decrees of courts for the maintenance of deserted wives, whether the trust became operative before or after the passage of the act, is unconstitutional as to trusts operative at the time of its passage, and constitutional as to trusts going into operation after its passage.

5. Where it does not appear from the bill that the only property within the jurisdiction of the court is held by trustees under a spendthrift trust, in operation before the passage of the Act of May 10, 1921, a demurrer will be overruled, and the defendant given the usual time to file an answer.

Demurrer to bill in equity. Municipal Court, Phila. Co., Nov. T., 1923, No. 678.

*Illoway & Felix*, for plaintiff.

*Joseph Carson*, for Hampton L. Carson and Bank of North America and Trust Company, trustees, defendants.

*Walter George Smith*, for Frank G. Rogers, Sydney H. Rogers and Fidelity Trust Company, trustees, defendants.

*Knight, Henry & Keating*, for William Weightman, defendant.

*A. H. Wintersteen*, for Philadelphia Trust Company and James C. Stillwell, trustees, defendants.

BONNIWELL, J., March 6, 1924.—The plaintiff, Marie Weightman, filed a bill in equity, naming as defendants her husband, William Weightman, and trustees under three separate trusts.

The bill avers the marriage of the parties in California, the citizenship of the husband in Pennsylvania and the wife in Texas, and their residence in California at the time. It also avers that, "after living in various parts of the country," "on or about Dec. 2, 1918, without reasonable cause, the husband deserted her, and, although able to maintain her, he refused and neglected to do so." The bill charges that the husband's whereabouts are unknown to the wife, and that he is a beneficiary in three separate trusts whose trustees are named as co-defendants. Finally, the bill avers that the plaintiff is domiciled at a given address in the City of Philadelphia, and that she is within the jurisdiction of the court *animo manendi.*

The bill prays that the husband be required to answer the allegations of the bill, and that from his property lying and being in the City of Philadelphia "a sum amounting to 50 per cent. of the total to which the said William Weightman is presently or shall be entitled to be set apart" for

4 D. & C.

her maintenance, and also that "an order in accordance with the exigencies of the case be made against the said William Weightman in favor of your orator."

After a general appearance had been entered for the defendant, on his behalf a demurrer to the bill was filed. The grounds therein set forth are: (1) That upon the face of the bill, the plaintiff is not entitled to the relief claimed; (2) that upon the face of the bill, it appears that the defendant is not liable to the plaintiff in any way; (3) that the bill does not state any cause entitling the plaintiff to the relief prayed for; and (4) that this court has no jurisdiction of the bill.

Separate answers were filed by representatives of each of the trust estates.

The answer of the trustees of the Rogers will set up a testamentary direction to pay income to the separate use of testatrix's children, and made the receipt of a child, but of no other person, a valid voucher. Trustees under the Weightman will answered that they had previously made a complete distribution. Trustees under the Walker deed answered that under a trust deed defendant was entitled to receive the income of a fund "without liability to anticipation or attachment or other legal or equitable process or proceeding."

The frame of the bill and of the prayers for relief indicate that the proceedings were brought under the Act of May 23, 1907, P. L. 227, as amended or supplemented by the Acts of April 27, 1909, P. L. 182, July 21, 1913, P. L. 867, and May 10, 1921, P. L. 434.

In their paper-book in support of the demurrer counsel for the defendant have urged with great earnestness ten points. Some of these points relate to the construction of these acts and the proper procedure under them; others relate to the jurisdiction of this court, and others question the constitutionality of the Act of 1921. The last point does not strictly come before the court on consideration of the demurrer, because it appears only from the prayers for relief that plaintiff relies on the Act of 1921, and the bill might be sustained, although the relief could not be granted as prayed for. In considering the sufficiency of the bill on demurrer, we are not permitted to take into account facts appearing in the answers filed by the trustees. However, on account of the novelty and importance of the many questions involved, full consideration is given to them in disposing of the demurrer to the bill, although some of them are not properly before the court at this time.

Before taking up these acts of assembly, it may be well to consider an objection to the bill which really relates to the jurisdictional amount of the relief which may be afforded by this court in a domestic relation case. It is contended for defendant that the bill is defective because the plaintiff had failed to file a certificate as to the amount of the thing or matter in controversy, as required by section 10 of the Act of July 12, 1913, P. L. 711, as amended by the Act of May 11, 1923, P. L. 201.

Our answer is that no certificate is necessary in a proceeding brought in the Municipal Court under section 11 of the Municipal Court Act by a wife against a husband for support, because by express terms the jurisdiction of the Municipal Court is made exclusive. This court, therefore, has jurisdiction, irrespective of the amount of money involved.

Before taking up the specific objections to the bill raised by the demurrer, the acts will be quoted.

The Act of May 23, 1907, P. L. 227, entitled "An act relating to husband and wife, and to enlarge the rights and remedies of married women in case of desertion or non-support by husbands," provides as follows:

"Section 1. Be it enacted, &c., that if any man shall separate himself from his wife without reasonable cause, and, being of sufficient ability, shall neglect or refuse to provide suitable maintenance for his said wife, such wife shall be and is hereby empowered to bring her action at law or in equity against such husband for maintenance, in the Court of Common Pleas of the county where the desertion occurred, or where she is domiciled, and the said court shall have power to entertain a bill in equity in such action, and shall make and enforce such orders and decrees as the equities of the case demand.

"Section 2. Whenever such husband shall absent himself from the Commonwealth, proceedings may be had against any property, real or personal, of said husband necessary for the suitable maintenance of the said wife; and the court may direct a seizure and sale, or mortgage, of sufficient of such estate as will provide the necessary funds for such maintenance, and service upon the defendant shall be made wherever he may be found, in the manner provided in the act of general assembly entitled 'An act to authorize the execution of process in certain cases in equity concerning property within the jurisdiction of the court, and on the defendants not resident or found therein,' approved April 6. 1859."

The Act of April 27, 1909, re-enacts section 2 of the Act of 1907 (above), omitting the words "wherever he may be found."

The Act of July 21, 1913, provides that section 2 of the Act of 1907, as amended by the Act of 1909 (above), be amended by substituting for

"Section 2. Whenever such husband shall absent himself from the Commonwealth," etc., the following:

"Section 2. Whenever any man has heretofore separated, or hereafter shall separate, himself from his wife without reasonable cause, or whose whereabouts are unknown, and, being of sufficient ability, has neglected or refused, or shall neglect or refuse, to provide suitable maintenance for his said wife," etc.

The Act of May 10, 1921, P. L. 434, is entitled "An act to empower courts of competent jurisdiction to issue writs of execution against property of defendant, and attachment execution, or in the nature of attachment execution, against trusts, including those commonly known as spendthrift trusts, no matter when such trusts were created, in cases where an order, award or decree has been made against a husband for the support of his wife or children, or both; making such attachment execution against trusts a continuing lien and levy for 50 per centum of such money or property until the order, judgment or decree is paid in full, with costs; and abolishing the benefit of the exemption law in such cases." The act provides:

"Section 1. Be it enacted, &c., that whenever any court of competent jurisdiction has made an order or entered a decree or judgment against any husband, requiring him to pay any sum or sums for the support of his wife or children, or both, the court may issue the appropriate writ of execution against any property, real or personal, belonging to the defendant to enforce said order, decree or judgment, and the said court may issue a writ of attachment execution, or writ in the nature of attachment execution, against any money or property to which said husband is entitled, whether under what is known as a spendthrift trust or otherwise; and the said writ of attachment execution shall become a lien and continuing levy upon any money or property to which he may be in any way entitled, whether under what is commonly known as a spendthrift trust or otherwise; and, in cases of levy on, or attachment of, any trust, said levy or attachment shall only be for 50 per centum thereof, and shall remain a continuing levy until the order, decree or judg-

ment has been paid in full, with costs; and, in cases where the order, decree or judgment requires the payment of stated sums at stated intervals, said writ of attachment execution shall remain a lien and continuing levy until the last payment due under such order, decree or judgment has been made, with costs. The person against whom such an order, decree or judgment is made shall not be entitled to the benefits of any exemption law now in force or hereafter passed. The provisions of this act shall apply to any trust, whether it is such a trust as is known as a spendthrift trust or otherwise, whether such trust was created or came into existence before or after the passage of this act. Where an attachment execution is issued, the further proceedings thereon shall be in the manner heretofore practiced and allowed in cases of foreign attachment."

It is argued in support of the demurrer that the bill is insufficient to sustain a decree, because it appears from the face of the bill that neither of the spouses had any domicile in Pennsylvania until after the separation complained of, and such separation is not alleged to have occurred in this State.

Prior to the Act of 1907, by the Act of April 13, 1867, P. L. 78, a husband, being in Pennsylvania, who, without justification, had abandoned his wife and had failed to provide for her, might be arrested and held for a hearing before the Court of Quarter Sessions. After hearing, such court might order him, being of sufficient ability, to pay a reasonable amount, not exceeding $100 per month, for his wife's maintenance, compliance with the order being enforceable by commitment to the county prison.

The Act of March 5, 1907, P. L. 6, re-enacted this act, omitting the limitation of $100.

The Act of April 15, 1913, P. L. 72, amended the Act of 1907 by giving the court power to issue appropriate writs of execution against property of the defendant, and writs of attachment execution against any money or property to which he may be entitled, "whether under what is known as a spendthrift trust or otherwise."

It was held that these acts were applicable "without regard to the settlement or residence of the defendant husband, and without reference to where the original desertion took place:" Com. v. Tragle, 4 Pa. Superior Ct. 159; Barnes v. Com., 11 W. N. C. 375; Com. v. Hart, 12 Pa. Superior Ct. 605; Com. v. Hawkins, 80 Pa. Superior Ct. 520.

The Act of 1867 was held not limited in its application to citizens of this Commonwealth: Com. v. Hopkins, 53 Pa. Superior Ct. 16, affirmed 241 Pa. 213; Com. v. Hawkins, 80 Pa. Superior Ct. 520.

The Act of 1867 was not a poor law for the relief of the poor district in which the deserted wife resided: Demott v. Com., 64 Pa. 302. Therefore, the deserted wife's removal to another state is not ground for revocation of an order in her favor: Com. v. Hawkins, 80 Pa. Superior Ct. 520.

The husband's duty to support his wife is a continuing one and survives his abandonment of her. A husband who comes into this State after an unjustifiable separation from his wife in another state brings his matrimonial obligations with him.

The purpose of the Act of May 23, 1907, as declared in its title, "was to enlarge the rights and remedies of married women in case of desertion or non-support by husbands." It gave to the deserted wife the inquisitorial powers of a court of equity to locate and determine the value of the husband's property. The 2nd section of the Act of 1907 gave the deserted wife, whose husband had absented himself from the Commonwealth, a right to proceed directly against his property within the jurisdiction of the court.

Section 1 prescribes the conditions upon which relief under this section is to be granted. There must be a separation by the husband without reasonable cause, sufficient ability to provide suitable maintenance for the wife, and a failure to so provide; and the wife may then sue in the court of the county where the desertion occurred, or where she is domiciled. Section 2 does not repeat the conditions and limitations already given in section 1, but gives a remedy directly against the property of "such husband."

The provision that the deserted wife might sue either in the county where the desertion occurred or where she is domiciled indicates that the legislature had in view a desertion occurring in Pennsylvania. This idea is borne out by the opening sentence of section 2: "Whenever such husband shall absent himself from the Commonwealth." If the Act of 1907 were being construed by itself and without amendment, it might well be argued that its application should be restricted to husbands who had deserted their wives in Pennsylvania. We are, however, construing the Act of 1907, as amended.

A consideration of the language of the Act of July 21, 1913, P. L. 867, in connection with the prior acts which it amended indicates that the legislature intended full scope to be given to the general language of the Act of 1913.

Section 1 of the Act of 1907 applies to the case where the husband is served with the bill and the decree is enforced by attachment, if necessary. This section remains without amendment. Section 2 of the act applied in express terms to husbands who absented themselves from the Commonwealth, and provided for service upon the defendant wherever found,, in accordance with the act of assembly for service on non-resident defendants in equity procedure. The Act of 1909 extended the remedy to husbands who could not be found after leaving the Commonwealth. The Act of 1913 again extends the scope of the remedy; it repeats the terms and conditions contained in section 1 of the Act of 1907, and includes cases wherever the desertion took place. If the residence of the husband is known and he is within the Commonwealth, he must be served under section 1. If he is beyond the reach of service or his whereabouts are unknown, service is made as directed by section 2.

The fact that for many years the Act of 1867 has been held to apply to a husband who deserted his wife in another state and came into Pennsylvania is an additional reason why the Act of 1913 should be held to apply to desertions in other states, where the husband has property in this State and the conditions of the Act of 1913 are complied with.

Any requirement that the wife shall have a *bona fide* domicile in the county where she files her bill is complied with by the plaintiff in this case.

Very few of the decisions in cases brought under these acts afford any light upon the question under consideration.

In Duncan *v.* Duncan, 265 Pa. 464, a wife filed a bill in equity against her husband for support under the Act of May 23, 1907, P. L. 227, and its supplements of April 27, 1909, P. L. 182, and July 21, 1913, P. L. 867. The bill alleged that the parties were living in the county when the desertion took place, and that the plaintiff had remained a resident of that county and was such resident at the time of filing the bill. In its conclusions of law, at the request of the defendant, the court below declared that the above acts of assembly applied only to a husband who was domiciled, at the time of the desertion, in Pennsylvania, or who, immediately prior to his whereabouts becoming unknown, was domiciled therein. The court, however, found as a fact that the defendant was domiciled in Pennsylvania at the time of the desertion. The court below entered a decree requiring defendant to pay to his wife $3000 cash and $2000 annually.

4 D. & C.

On appeal, the Supreme Court reviewed the evidence and found that there was sufficient evidence that defendant's desertion was without justification or excuse; that plaintiff was a resident of the county in which suit was brought at the time of the desertion; and defendant was possessed of property within the jurisdiction of the court. The Supreme Court assumed, without deciding, that the plaintiff was required to show property within the jurisdiction of the court, notwithstanding a general appearance. In the lower court it was found as a fact that the desertion had taken place in Pennsylvania, and this fact was treated as a necessary jurisdictional fact. In the Supreme Court it is stated as a fact, but not as a jurisdictional ground.

This case, therefore, does not determine that the desertion must take place in Pennsylvania to give the court jurisdiction.

In Fulford *v.* Fulford, 19 Dist. R. 821 (1910), the wife filed a bill in equity under the Acts of 1907 and 1909, averring a marriage in New York with a British subject temporarily resident in New York. The only residence in Pennsylvania averred was a visit lasting for two days. The bill averred a desertion by the husband while they were in New York, and that defendant was possessed of property within the jurisdiction of the court. The defendant filed a petition for leave to enter a special appearance to question the jurisdiction of the court.

The court dismissed the bill on the ground that there was no sufficient averment in the bill that the plaintiff was domiciled in the county, or that the desertion had taken place here.

The court observed that the plaintiff could not have any domicile apart from her husband, and, therefore, could not acquire a domicile in this State while her husband was domiciled in Great Britain or New York.

In so far as this may have a bearing on the construction of the Amendment of 1913, it may be replied that a wife abandoned without justification may acquire a domicile separate and apart from her husband: Haddock *v.* Haddock, 201 U. S. 562-571; Starr *v.* Starr, 78 Pa. Superior Ct. 579.

We conclude that the bill is not defective because it does not show that the desertion took place in Pennsylvania, or that either of the parties was domiciled here until after the desertion, when the plaintiff came to Philadelphia and established a domiciliary residence *animo manendi*.

It is next contended in the argument for the demurrer that there can be no relief under the Act of May 10, 1921, P. L. 434, by the bill in equity, because the bill does not show any decree or order against the defendant requiring him to support the plaintiff.

The Act of 1921 does not provide a complete system by which a deserted wife may obtain relief from a husband who, having property, refuses to provide for his wife. It assumes that there are already in force remedies in competent courts by which she can obtain either an order, a judgment or a decree requiring him to provide a definite amount for her support. It provides that the court making the order or entering the decree or judgment may issue process in the nature of a writ of execution or attachment execution "against any money or property to which the husband is entitled, whether under what is known as a spendthrift trust or otherwise."

The Act of 1921 was obviously intended to reach spendthrift trusts, whether they became operative before or after the passage of the act. In Com. *v.* Thomas, 65 Pa. Superior Ct. 275, it was held that an attachment issued under a judgment entered on a bond in proceedings for the support of children cannot attach income accrued since the passage of the Act of April 15, 1913,

P. L. 72, on a strict spendthrift trust created by a will which became operative in 1910.

The practice under the Act of 1907, as amended, was, after personal service of the bill and hearing, a decree enforceable as decrees in equity: Duncan *v.* Duncan, 265 Pa. 464. If no personal service on the defendant could be had after service by publication, the proceedings were *in rem* against his property within the jurisdiction: Erdner *v.* Erdner, 234 Pa. 500.

The legislature intended to supplement the relief provided for by existing laws, by which an order, a judgment or a decree was obtained against a deserting husband, either in the Quarter Sessions, under the Act of 1867 and its supplements, or under the Act of May 23, 1907, and its supplements. The bill and proceedings thereon up to and including a decree or proceedings in the Quarter Sessions, including the award, must precede the special relief afforded by the Act of 1921. After a decree or award, the act provides for supplementary proceedings in the nature of attachment execution, by which trust property held in trust for the husband may be reached.

Of course, in such case, the garnishee or trustee of a fund cannot be called upon to answer until after the order, judgment or decree has been made against the husband.

We, therefore, conclude that, in so far as the bill is dependent on the Act of 1921 (subject to the constitutionality of the act, a point next to be considered), the bill is sustainable against the husband, but no answer can be required of the trustee of any trust fund to which the husband is entitled until after the decree.

It is also argued in support of the demurrer that the Act of May 10, 1921, P. L. 434, in so far as it attempts to subject a spendthrift trust fund already operating at the time to the payment of a decree in favor of the beneficiary's wife, offends the Federal Constitution.

A trust fund limited upon a strict spendthrift trust provision is protected from execution or attachment by creditors of the beneficiary because the creator of the trust has a property in the fund in the hands of the trustee: Morgan's Estate, 223 Pa. 228. In this case the Supreme Court said (page 230) : "Spendthrift trusts can have no other justification than is to be found in considerations affecting the donor alone. They allow the donor to so control his bounty, through the creation of the trust, that it may be exempt from liability for the donee's debts, not because the law is concerned to keep the donee from wasting it, but because it is concerned to protect the donor's right of property."

If the observance of terms of a spendthrift trust is a property right of the creator of the trust, is this right protected by the Federal Constitution from violation by an act of assembly which subjects the trust fund to claims for the support of the beneficiary's wife?

In Com. *v.* Thomas, 65 Pa. Superior Ct. 275, the Superior Court held that a judgment on a bond given in proceedings for the support of children would not sustain an attachment of income accrued since the passage of the Act of April 15, 1913, P. L. 72, on a strict spendthrift trust created by will which became operative in 1910.

The Superior Court said (page 278) : "It is hard to perceive why, in attempting to collect that judgment, it should be held to rest on a different basis from judgments in favor of the butcher, the baker or the tailor, who had fed or clothed the wife and children of a recalcitrant husband and father in discharge of the obligation primarily imposed by law upon him. . . . In Board of Charities *v.* Lockard, 198 Pa. 572, Mr. Justice Potter thus disposed of the

4 D. & C.

line of argument we are now considering: 'The general rule of law in Pennsylvania sustaining spendthrift trusts is admitted; but it is strongly urged, upon grounds of public policy, that an exception should be made in favor of a beneficiary having a wife and children dependent on him for support. . . . The fund did not originate with the beneficiary, but the bequest was made by another, who had the right to bestow his benefactions as he pleased.' In other words, the underlying thought is the possession of the trustee is the possession of the testator, not of the beneficiary."

After the instrument creating the spendthrift trust becomes operative, the rights of the creator become vested, and any attempt by subsequent legislative act to divest such rights is a violation of the due process clause of the Federal Constitution.

In Greenough v. Greenough, 11 Pa. 489, the Act of Jan. 27, 1848, P. L. 16, changing the requirements as to the due execution of a will, was held unconstitutional as applied to a will in operation at the date of its passage, because the effect would be to transfer property already vested in one set of heirs to another set of beneficiaries.

In Lisle's Estate, 22 Pa. Superior Ct. 262, it was held that when property became vested under a rule of law arising from a construction of precatory words as mandatory, such rights could not be divested by a subsequent decision of the Supreme Court that such words were merely precatory.

We, therefore, conclude that the Act of 1921, in so far as it attempted to make the fund limited upon a strict spendthrift trust for the benefit of a husband subject to decree for the support of a wife, is unconstitutional as applied to trusts in operation at the time of the passage of the act.

Is the Act of 1921 constitutional as applied to trusts which become effective subsequent to the passage of the act?

The act in effect says to intending creators of spendthrift trusts, "you shall not create a spendthrift trust except upon condition the beneficiary's interest becomes subject to claims of the wife fixed by the award of competent courts." When the trust is created, the condition is already attached. It will hardly be contended that the grantor has a vested right to create a spendthrift trust, and this right is beyond legislative control.

Neither is the Act of 1921 unconstitutional as a special law providing for changing the method for the collection of debts or the enforcement of judgments, contrary to article III, section 7, of the Constitution of Pennsylvania. See Vulcanite Portland Cement Co. v. Allison, 220 Pa. 382.

While a husband's duty to support his wife may be called a debt, it is one of higher obligation than that arising from contract, and, therefore, it may be enforced by special remedies, and judgments in support cases may be followed by special proceedings in execution.

The system by which wives were given more summary relief for support against their husbands than general creditors is older than the Constitution of 1874.

We, therefore, conclude that the Act of 1921 is constitutional as to spendthrift trusts which take effect subsequent to the passage of the act.

It is next contended that the Act of 1921 is unconstitutional because it alters the will of a private individual, in which he makes a disposition of his own property not contrary to law.

Our answer is that, in so far as the will has become operative, the Act of 1921 cannot disturb vested rights without violating the Federal Constitution; in so far as the will becomes operative after the passage of the act, the act

does not disturb vested rights, and, therefore, is constitutional. This follows necessarily from the answer to the preceding question.

It is next contended that to grant the relef prayed for would subject trustees to the jurisdiction of the Municipal Court, whereas, by the Fiduciary Act of 1917, the Orphans' Court has exclusive jurisdiction over the accounts of trustees.

We answer that the Act of 1921 does not interfere in any way with the control of fiduciary trustee's estate committed by the Fiduciaries Act to the Orphans' Court. The accounts of the testamentary trustees and their relations with their beneficiaries are still matters exclusively for the Orphans' Court.

The remaining arguments urged by the defendant merely raise the constitutional question already considered.

In conclusion, we hold:

1. The Municipal Court having, by the Act of July 12, 1913, § 11, P. L. 711, exclusive jurisdiction in all proceedings against husbands deserting or failing to support their wives, no certificate of the amount involved need be filed with a bill in equity filed in that court against a deserting husband for the purpose of reaching property held in trust for the benefit of the husband.

2. A bill in equity filed in the Municipal Court by a deserted wife to reach property held in this Commonwealth in trust for the benefit of her husband is good on demurrer, although it does not aver that the desertion took place in this Commonwealth, or that either of the parties was domiciled in this Commonwealth prior to the desertion.

3. Although the bill described in the preceding paragraph indicates that it was filed to reach a spendthrift trust in accordance with the Act of May 10, 1921, P. L. 434, it is not demurrable in failing to aver that an award has been made or a decree entered against the husband before the filing of the bill.

4. The Act of May 10, 1921, P. L. 434, making spendthrift trust funds in favor of husbands subject to the awards or decrees of courts for the maintenance of deserted wives, whether the trusts became operative before or after the passage of the act, is unconstitutional as to trusts operative at the time of the passage of the act, and constitutional as to trusts going into operation since the passage of the act.

5. As it does not appear from the bill that the only property within the jurisdiction of the court is that held by trustees under a spendthrift trust in operation prior to the Act of May 10, 1921, the demurrer is overruled and the defendant is given the usual time to file an answer.