## Hays's Estate.

*Trust and trustees—Separate use trust—Accumulated income in the hands of the trustee.*

Where a testator gives the corpus of the residue of his estate to trustees with active duties as to its management, and directs that the net income thereof shall be divided into shares and distributed among his children and directs that the shares allotted to his daughters "shall be for their sole and separate use, and shall be paid into their own hands respectively, and upon their own sole receipt therefor," the accumulated income of a daughter which had accrued and was due and payable at the time a judgment was entered against her, cannot be attached in the hands of the trustees by proceedings under the judgment.

In such a case the duties of a trustee are active. He must manage the principal and thereby produce the income. But this is not the end of his duties or of his control over the fund. While it is his duty to make the corpus of the estate productive, yet the obligations of the trust also require him to pay it to the cestui que trust. This is the consummation of his duties, and until that act is performed, he has not executed the trust. Until he has completed the duties imposed upon him in regard not only to the collection but also to the transmission of the income of the estate to the donee, it is still within his control for that purpose, and is not the absolute property of the beneficiary. Per MESTREZAT, J.

Argued Nov. 6, 1901. Appeals, Nos. 140 and 141, Oct. T., 1901, by William T. Bruckner and Arthur B. Schaffner, from decree of O. C. Allegheny Co., June T., 1901, No. 141, dismissing exceptions to adjudication in Estate of James H. Hays, Deceased. Before McCOLLUM, C. J., MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Exceptions to adjudication.

From the adjudication of HAWKINS, P. J., the following facts appear:

James H. Hays, by his will created a trust for his children, including Mrs. Wylie, the material features of which are as follows: Subject to certain provisions in favor of his widow, he gave the management of his estate for a period of ten years to a trustee, with direction that the "net annual income and profits should be divided into eleven shares, and distributed in absolute property" among his children and grandchildren (naming them), Mrs. Wylie being given one share—and then

proceeded—"the shares allotted as aforesaid to my daughters shall be for their sole and separate use, and shall be paid into their own hands respectively upon their own sole receipt therefor . . . . The entire of my personal estate remaining undisposed of at the expiration of the aforesaid period of ten years, shall be retained by my said executors to their own use and in trust for my said daughters and grandson respectively in the proportion aforesaid . . . . Only the income or profit thereof paid to each of them or any of them during their natural lives, in the manner heretofore prescribed, in respect to the income from my entire estate, real and personal . . . . As touching and concerning the body of my real estate . . . . unconverted or undisposed of at the expiration of said period of ten years, my will is that the same . . . . shall continue in my said executors to the uses and upon the trust following, to wit: . . . .

"To have and to hold the remainder of said shares in trust for and to the use of my said six daughters equally . . . . accounting and paying over to them respectively from time to time during their respective lives for their sole-and separate use the net proceeds, profits and income thereof, in like manner as hereinbefore expressed in respect to their shares in the income of my entire real and personal estate and upon the decease of any of my said daughters leaving issue the trust to be continued in the same manner for the benefit of said issue during their minority and to be executed and performed in like manner . . . . But if any of my said daughters shall die without leaving issue, or if leaving issue said issue shall die in their minority failing issue, the share of such daughter shall go to her surviving sisters equally, but upon the same trust limitations as herein expressed and provided in respect of the trust, firstly and directly created in their favor." Provision was made for partition at the expiration of the period of ten years aforesaid and this has since been executed.

After the payment of debts no personal estate remained, so that the trust embraced realty only.

In July, 1900, foreign attachments were issued in which Mrs. Wylie's trustee was summoned as garnishee. Counsel for attaching creditors concedes that the will created a separate use trust for Mrs. Wylie, and that accruing income is not liable to attachment, but insists that after such income becomes

due and payable it is liable, and counsel for the trustee and Mrs. Wylie denies that the income is liable, either before or after maturity.

The auditing judge held that the income which had accrued was exempt from the claims of Mrs. Wylie's attaching creditors.

Exceptions to the adjudication were dismissed by the court.

*Error assigned* was in dismissing exceptions to adjudication.

*George B. Gordon,* of *Dalzell, Scott* and *Gordon,* for appellants.—The clause against anticipation, applies only to the future income; it will not be operative to remove arrears of income from the control of the feme, or from process by suit of the creditors as to arrears which have become due before the judgment: 2 Lewin on Trusts, *787; Bispham's Equity, sec. 104.

*Charles P. Orr,* with him *Thomas C. Lazear,* for appellee, cited: Lancaster v. Dolan, 1 Rawle, 231; Steinmetz's Est., 168 Pa. 175; Nichols v. Eaton, 91 U. S. 716; Rife v. Geyer, 59 Pa. 393; Beck's Est., 133 Pa. 51; Goe's Est., 146 Pa. 431; Steib v. Whitehead, 111 Ill. 247; Smith v. Towers, 69 Md. 77; 14 Atl. Repr. 497.

OPINION BY MR. JUSTICE MESTREZAT, January 6, 1902:

The opinion of the learned president of the orphans' court fully vindicates the decree which he directed to be entered in each of the cases under consideration. The court below held that the income accruing to Mrs. Wylie under her father's will, is exempt from the claim of her creditors, and we agree with the conclusion.

On the former appeal in this estate (184 Pa. 386) it was held that the daughters took a life estate, the legal title to which was placed in the trustees upon an active trust, created for the sole and separate use of each of them during life, with the limitation of the fee after their death. In the opinion of the court it is said: " This (income) they were directed to pay in these words, ' The net annual income and profits shall be divided into eleven shares and distributed in absolute property.' Each of the daughters was to receive one share, which was to be paid

her ' for her sole and separate use, and shall be paid into their own hands respectively upon their own sole and separate receipt therefor.' These words are apt and appropriate for the creation of a sole and separate use trust for each of the daughters in the income from the undivided estate, and are substantially repeated as to the shares of each in the estate after its division at the end of ten years." The fund in dispute in this controversy is the income from realty only, which has accrued and was due and payable to Mrs. Wylie at the time the appellants obtained their judgments.

The appellants are creditors, and they are seeking to enforce their claim against this fund on the ground that, being income that had accrued and become due and was payable at the time of the recovery of their judgments, it was, under the terms of testator's will, the absolute property of the beneficiary, and as such liable for her debts. It is argued for the appellants that the direction in the will that the income should be "paid in their own hands respectively upon their sole receipt therefor," was merely what is implied in every separate trust estate, and hence was practically ineffective in controlling the estate given the beneficiaries. In other words, as we understand the counsel for the creditors, while Mrs. Wylie could not legally anticipate her share of the income from the realty, yet her share of the accrued income in the hands of the trustee was her property, over which she had absolute power and dominion, and consequently might be subjected to the payment of her debts.

Nearly three quarters of a century ago it was decided by this court in Lancaster v. Dolan, 1 Rawle, 231, GIBSON, Ch. J., delivering the opinion, that a feme covert is, in respect to her separate estate, to be deemed a feme sole only to the extent of the power clearly given by the instrument by which the estate is settled, and has no right of disposition beyond it. This was reiterated a few years later in Thomas v. Folwell, 2 Whart. 11, wherein it is said by the same learned judge: "We therefore hold it to be the settled law of Pennsylvania that instead of having every power from which she is not negatively debarred in the conveyance she shall be deemed to have none but what is positively given or reserved to her." In MacConnell v. Lindsay, 131 Pa. 476, the same principle is enunciated, and Mr. Justice CLARK, speaking for the court, says (p. 486):

" The rule is now well settled that neither the feme covert, nor her husband, nor both together, have any powers over her separate estate, except what are given by the trust instrument, and that even these must be strictly construed."

The testator devised the residue of his estate, real, personal and mixed, to his trustees. They were to hold it in trust for the parties named in his will. He directs that for ten years after his death his trustees shall manage and control the estate, and the net income thereof shall be divided annually into eleven shares and be distributed among his children and a grandchild, but provides that " the shares allotted as aforesaid to my said daughters, shall be for their sole and separate use, and shall be paid into their own hands respectively, upon their own sole receipt therefor." At the expiration of the ten years he directs that his undisposed of personal estate shall be held by his trustees, and that the shares of his daughters shall be put at interest " and only the income or profit thereof be paid to them or any of them, during their natural lives, in the manner heretofore prescribed in respect to the income from my entire estate real and personal." The testator also directs that at the end of the ten years his real estate shall be divided into eleven shares, and that his trustees shall hold six of those shares in trust for his six daughters, " with full power and authority to control and manage the same in their discretion, accounting and paying over to them respectively from time to time, during their respective lives, for their sole and separate use, the net proceeds, profits and income thereof, in like manner as hereinbefore expressed in respect to their shares in the income of my entire real and personal estate."

It will be observed that the corpus of the estate is not given to Mrs. Wylie nor has she any control or management of it. The legal title in the entire estate is vested in the trustee, with authority to manage and control it. The income arising from the real estate (which is the subject of this litigation) is held by the trustee " in like manner as hereinbefore expressed in respect to their shares in the income of my entire real and personal estate." It is therefore held " for their sole and separate use and shall be paid into their own hands respectively upon their own sole receipt therefor." The language of the instrument creating this trust estate clearly discloses the intention

of the testator, and is sufficient to carry that intention into effect. He desired to protect his daughter not only during coverture, but for her life, from her own improvidence as well as from the demands and importunities of those who might be in a position to assert influence over her. Her father intended to safeguard the fund so that it would be secure against dissipation and loss from any and every source, until actually placed in her own hands. When it was deposited there he through his trustee, relinquished control over it and not until then did he give her the absolute dominion over it. The principal of the fund was not hers and by the plain language of the will, the income could only become hers when it was paid by the trustee into her own hands, and her receipt was given therefor. The instrument creating the trust which is the law of the case, shields and protects the fund from the time it is produced until it is delivered to and accepted by the beneficiary. The powers of the trustee over it and the interest or estate of the cestui que trust in it are clearly defined by the will, and in the language of the court in MacConnell v. Lindsay, supra, neither the feme covert nor her husband nor both together, have any powers over the fund except what are given by that instrument. The duties of the trustee are active. He must manage the principal and thereby produce the income. But this is not the end of his duties or of his control over the fund. While it is his duty to make the corpus of the estate productive, yet the obligations of the trust also require him to pay it to the cestui que trust. This is the consummation of his duties, and until that act is performed, he has not executed the trust. Until he has completed the duties imposed upon him in regard not only to the collection but also to the transmission of the income of the estate to the donee, it is still within his control for that purpose, and is not the absolute property of the beneficiary. To hold that the duty of the trustee ceases when he has possession of the income, ignores one of the duties clearly and distinctly imposed upon him by the terms of his trust. This cannot be done if the instrument creating the trust is to control his action, as well as to limit and define the powers of the beneficiary over the fund. She cannot alienate it nor is it liable for her debts. The only sufficient reply to a demand of the cestui que trust upon the

trustee for the income of the estate is payment to her and her receipt therefor. It therefore necessarily follows that while the fund is in the hands of the trustee, it is not liable to the claims of the creditors of the cestui que trust.

It cannot be questioned that the testator had the right to place the income of his estate in the hands of a trustee for the use of his daughter for her life and protect it during the existence of the trust, from the claims of her creditors. That this may be done whether the fund is in the hands of a trustee or in transit to the donee, is conceded by the learned counsel for the appellants. But the contention is that the language used by the testator in the case in hand does not disclose such to be his intention, and is not sufficient to establish a trust of that character. The solution of the question, therefore, depends upon the interpretation of the instrument creating the trust, and our construction, as appears from what has been said above, does not sustain the position of the appellants.

The appeal in each case is dismissed and the decree of the court below is affirmed.