Sproul-Bolton *v.* Sproul-Bolton, Appellant.

86

Argued October 7, 1955. Before STERN, C. J., STEARNE, JONES, MUSMANNO and ARNOLD, JJ.

*James M. Arensberg,* with him *Charles B. Jarrett, Jr., A. E. Kountz, W. A. Meyer, Edward P. Good, Patterson, Crawford, Arensberg & Dunn,* and *Kountz, Fry & Meyer,* for First National Bank & Trust Company, appellant.

*Edward P. Good,* with him *A. E. Kountz,* and *Kountz, Fry & Meyer,* for Sproul-Bolton, appellant.

*Edmund K. Trent,* with him. *Carl E. Glock,* and *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, November 14, 1955:

Was the corpus of the spendthrift trust here involved immune from attachment by a creditor of the beneficiary after the latter had become entitled to receive it but before it had been paid to him by the trustee? That is the sole question on this appeal.

Elizabeth Howe Sproul, who died in 1934, created a testamentary trust as to a portion of her estate which she bequeathed to trustees in trust to pay the income to a tenant for life and then to the latter's issue during their respective lives; "the right of each of such issue to receive such income to cease, however, upon his or her receipt of a share of the principal as hereinafter provided." A proportionate part of the principal was to be "transferred and conveyed, free and discharged of all trusts, to each of said issue . . . if and when he or she shall have attained the age of thirty years." A subsequent provision was as follows: "I direct that the amounts payable to the various beneficiaries under the trust established by my will shall not be anticipated or assigned by them or any of them, or liable for their or any of their debts or engagements, but that their respective receipts for the money paid them under the provisions of said trusts shall be a full acquittance and discharge of the trustees therefor."

The life tenant died survived by three children, one of whom was the plaintiff, another the defendant. Plaintiff, upon reaching the age of thirty, received from the trustees his one-third share of the principal

of the trust, amounting to approximately $40,000. He entered into an oral agreement with his brother, the defendant, whereby the latter agreed to accept in trust such monies and securities as plaintiff might turn over to him from time to time, supervise the investment thereof, and deliver the securities in which the money had been invested to plaintiff at any time upon demand. Plaintiff is a British subject and an officer in the Royal Navy and was on duty in Bermuda for several years; from time to time he turned over to defendant sums aggregating in excess of $104,000. Defendant, having allegedly converted to his own use all these monies and the securities in which they were invested, absconded and his present whereabouts are unknown. He reached the age of thirty on March 31, 1955, and on March 30 and again on March 31 plaintiff served upon the surviving trustee a writ of foreign attachment, seeking to attach defendant's share of the principal of the Elizabeth Howe Sproul trust. At the same time he filed a complaint in equity against defendant for an accounting. The trustee, as garnishee, filed preliminary objections to the attachment, as did also defendant appearing by counsel de bene esse. They contended that, since the funds payable to defendant had not yet been turned over to him by the trustee, they were not attachable in the latter's hands, and they therefore prayed that the writ of foreign attachment be quashed. The court dismissed the preliminary objections and the trustee and the defendant appeal.

There is no question but that a spendthrift trust may validly be created to protect from creditors and from alienation the income to be paid to a beneficiary during a period of life or years. Likewise there is no doubt but that the principal of such a trust may be similarly safeguarded during such period, it being obvious that otherwise the payment of income to the bene-

ficiary could not be assured. But there arises the question as to the exact time when the period of such protection terminates and beyond which it may not be validly extended. Thus, in the present case, did the immunity of the share of the principal payable to defendant automatically end when he became entitled to receive it upon attaining the age of thirty years, or did it extend until the time when it would be actually paid to him by the trustee?

The authorities are reasonably clear in holding that the duration of such immunity depends entirely upon the intention manifested by the creator of the trust.

In *Morgan's Estate (No. 1)*, 223 Pa. 228, 72 A. 498, a testatrix devised and bequeathed her estate in trust to pay the income to her husband for three years, and then, or sooner if he so desired, to pay the principal as he should appoint, none of the estate to be liable for his debts or engagement; if he failed to appoint the estate was to go to his heirs. It was held that, since the termination of the trust would necessarily vest the absolute dominion and ownership of the property in the husband and give him the right to have it conveyed to him, it was subject to his creditors notwithstanding the spendthrift trust provision.

In *Hall's Estate*, 248 Pa. 218, 93 A. 944, a testator devised and bequeathed part of his estate to trustees to pay the income to his son until he should arrive at the age of thirty-five years, the same not to be liable for his debts or engagements and not to be assigned or anticipated by him nor be subject to attachment or any other claim of any of his creditors. As soon as the son arrived at the prescribed age the trustees were to grant and convey to him the entire principal of the trust estate free from any trusts or limitations whatsoever. On the day after he reached his thirty-fifth year a creditor entered judgment against him on

a note; an attachment execution was issued on the judgment and served on the trustees as garnishees. The son contended that his father's will protected the principal of the trust fund as well as the income from his debts and engagements and from attachment by his creditors. It was held, however, that while the spendthrift clause protected the corpus from execution or assignment during the period of the trust during which the income was to be paid to the beneficiary, there was nothing in the will which indicated an intention of the testator to subject the principal to a spendthrift trust nor any provision for protection of the corpus in transmission to the beneficiary at the end of the trust.

In *Keeler's Estate,* 334 Pa. 225, 3 A. 2d 413, a trust in the nature of a spendthrift trust was created by the testator in favor of his granddaughter for her support and education, the trust to end and the principal to be paid to her upon her attaining the age of twenty-one if her father were then dead, but not until the death of her father no matter how old she might then be. It was held that as far as the corpus of the trust fund was concerned the will did not restrict its alienability, it being clear that the testator was not seeking to protect her interest in the trust against creditors after she came of age but rather against demands and importunities of her father.

In *Trainer Estate,* 65 D. & C. Rep. 187, the testator provided that the beneficiaries of a trust created in his will should not have the right to assign or anticipate the principal of their shares prior to the time when they were to receive it; the shares were to be payable to them when they respectively attained the age of twenty-five years. The court, in an opinion by Judge LADNER, held that this language made it clear that the testator intended to prohibit anticipation or aliena-

tion only until the beneficiary attained the prescribed age and not to continue such restraints until the shares of the principal were actually paid into their hands; it was pointed out that the testator did not, as in *Hays's Estate*, 201 Pa. 391, 50 A. 775, in terms prohibit the payment to anyone other than the beneficiary, "and such additional restriction ought not to be implied in face of the period of the duration fixed by testator's express language. Without such a clause mere postponement of enjoyment until a given age would not of itself protect the fund until actually paid to the distributee. . . . all he [the testator] intended was to guard against possible improvidence until the age of discretion, which he fixed to be 25 years, was reached." Quoting from *Ritchie's Estate*, 24 Dist. Rep. 510, the court said that " 'the terms of an instrument creating a spendthrift trust are not to be strained in such manner as to withhold from persons who are sui juris the incidents of ownership, and incidentally the inseparable incident of alienability where one has an absolute estate.' " And the court added that "it should be noted that the Restatement of the Law of Trusts, secs. 151 and 153, while upholding spendthrift restrictions as to *income*, declares invalid such restrictions as to *principal* where the beneficiary is entitled to have the principal conveyed to him after a designated period." See also *McCandless' Estate*, 58 P. L. J. 28.

Examination of the cases relied upon by the defendant and the garnishee reveals that in each of them there was some express provision in the will indicating that the testator intended that the immunity of the principal of the fund from attachments and alienations should extend to the time when it was actually delivered into the hands of the beneficiary. Thus, in *Beck's Estate*, 133 Pa. 51, 19 A. 302, the share of the beneficiary was bequeathed "expressly upon condition" that

it was to be paid "directly" to her "without diminution for the payment of her . . . indebtedness." In *Goe's Estate,* 146 Pa. 431, 23 A. 383, there was a provision that none of the property devised and bequeathed by the testatrix could be levied upon for any debt or claim against her husband or any of her children, which the court interpreted to mean as long as the property was in the hands of her executors. In *Hays's Estate,* 201 Pa. 391, 50 A. 775, the provision was that the income of a trust payable to the testator's daughters was to be paid "into their own hands respectively upon their own sole receipt therefor." In *Heyl Estate,* 352 Pa. 407, 43 A. 2d 130, the provision in the will was that all payments of income to the beneficiaries should "be made to them directly" and "only become and be the property of the beneficiary when actually received by him or her." In *Rockhill's Estate,* 29 Pa. Superior Ct. 28, the spendthrift trust provided as to the income that the beneficiaries' "receipts *alone* shall discharge the trustees," and the latter had active duties to perform in connection with the property in addition merely to conveying it to the beneficiaries. In *Hartman's Estate,* 31 Pa. Superior Ct. 152, the direction in the will was that the share of a son of the testatrix should be paid "directly" to him "without diminution for the payment of any debts or liabilities whatever in transit" from the executor. In *Commonwealth v. Thomas,* 65 Pa. Superior Ct. 275, the income was to be paid to the beneficiary "upon his receipt only," and the trustee was given a discretionary power to pay or withhold any portion of the principal from the beneficiary. In *Holmesburg Building Association v. Badger,* 144 Pa. Superior Ct. 65, 18 A. 2d 529, the court construed the spendthrift trust, as in *Goe's Estate,* supra, to cover the interest of the beneficiary in the fund as long as it remained in the hands of the executors.

Without entering further into the details of these and other applicable authorities the general conclusion to be derived from them is, as already stated, that ordinarily the principal of a trust fund, the right and title to which has vested in the beneficiary and which has become payable to him, is subject to attachment by his creditors, and that it is only when the donor or testator who created the trust has by clear language expressed the intention that the immunity from attachment or alienation is to continue until actual payment of the principal to the beneficiary that such protection in transit will be accorded legal support. Analyzing the provisions in the will of Mrs. Sproul, there is no such clear language as would indicate an intention on her part to protect defendant's share of the principal of the trust estate after he had become entitled to receive it by attaining the age of thirty years. What the testatrix evidently desired was to safeguard from creditors the income of the beneficiaries during their formative years, not their shares of the principal payable to them upon their reaching what she regarded as the age of maturity. The shares were to be conveyed to them "free and discharged of all *trusts*" (not free from the *debts and obligations* of the beneficiaries as was the provision, for example, in *Riverside Trust Co. v. Twitchell*, 342 Pa. 558, 20 A. 2d 768). That the receipts of the beneficiaries for the money paid them should be a full acquittance and discharge of the trustees was obviously intended merely to protect the trustees themselves against further claims. It would seem clear that as soon as the defendant's right to receive his share of the principal accrued it became his property and he could immediately thereupon have compelled its conveyance to him; the trust thenceforth was a dry trust and neither the defendant nor the trustees could thereafter defeat the rights of creditors with re-

spect to the principal of the trust merely by allowing it, deliberately or otherwise, to remain in the trustees' hands. The rights of the creditors depended on defendant's interest in the property, not on his possession of it.

The Orders dismissing the preliminary objections of the defendant and the surviving trustee are affirmed.