**Central Penn National Bank v. Lavenson**

*Robert A. Kargen*, for plaintiff.

*Fox, Rothschild, O'Brien & Frankel*, for defendant.

WEINROTT, *J.*, June 24, 1975 — This case is before this court on plaintiff's motion for summary judgment against garnishees. However, at argument, all parties admitted that there was no genuine issue as to any material fact, and agreed to submit the matter on the record and briefs.

Defendants, Jay Lavenson and Dolores Lavenson, executed and delivered to plaintiff their promissory note dated October 10, 1972, for the principal amount of $25,000, plus interest at the rate of three-quarters of one percent above the prime interest rate charged from time to time by plaintiff.[*] Defendants defaulted in their payments, and plaintiff sued on the note. Judgment by default was taken on April 10, 1974, in the sum of $27,092.89. Plaintiff discovered that Jay Lavenson, Jr., was the beneficiary of a testamentary trust of his father, Jay Lavenson, Sr., and that Bernard A. Frankel and Robert Perry Frankel, Esq., were trustees of the estate of Jay Lavenson, Sr.

On July 3, 1974, plaintiff had issued a writ of execution naming Bernard A. Frankel and Robert Perry Frankel, Esq., as garnishees. Interrogatories were served on the garnishees and it was admitted that the garnishees were holding cash and securities of approximately $30,000 to $35,000, and

---

[*]No issue of usury has been raised and facts have not been presented for such a determination.

that one half of the fund is distributable to defendant, Jay Lavenson, upon termination of the trust.

Item 3 of the will conveyed the remainder of decedent's estate to the trustees to invest and reinvest the same and to pay the entire net income in quarterly or other convenient periodic payments to the wife of testator, Carolyn Lavenson, for the term of her natural life. Upon her death, the principal of the trust was to be transferred and paid in equal shares to James H. Lavenson and Jay Lavenson, Jr.

Item 6 of the original will provided as follows:

"All income and principal payable to any beneficiary under my Will shall to the *fullest extent permitted by law* be paid free and clear of, and the *interest* of such beneficiary shall not in any manner be subject or liable to, his or her debts, liabilities, contracts, engagements, anticipations and alienations or those of any other person, or subject to attachment, execution, or sequestration, for the debts or liabilities of any person whatsoever; and the personal receipt by such beneficiary shall be the sufficient and *only* discharge of my executors or trustees." (Emphasis supplied.)

It is agreed that Carolyn Lavenson is now deceased.

Plaintiff argues that since the interest of the life tenant has terminated, the trust is attachable notwithstanding the spendthrift clause because it is merely "dry." Defendants and garnishees argue, on the other hand, that the provisions of the spendthrift clause extended the immunity from attachment until actual payment over to the beneficiary.

Interestingly enough, all sides have cited Sproul-Bolton v. Sproul-Bolton, 383 Pa. 85, 117

A. 2d 688 (1955), in support of their respective positions. The Supreme Court there held, at 383 Pa. 88:

"There is no question but that a spendthrift trust may validly be created to protect from creditors and from alienation the income to be paid to a beneficiary during a period of life or years. Likewise there is no doubt but that the principal of such a trust may be similarly safeguarded during such period, it being obvious that otherwise the payment of income to the beneficiary could not be assured. But there arises the question as to the exact time when the period of such protection terminates and beyond which it may not be validly extended. Thus, in the present case, did the immunity of the share of the principal payable to defendant automatically end when he became entitled to receive it upon attaining the age of thirty years, or did it extend until the time when it would be actually paid to him by the trustee?

"The authorities are reasonably clear in holding that the duration of such immunity depends entirely upon the intention manifested by the creator of the trust."

In summing up, after a review of many authorities, the Supreme Court said, at 383 Pa. 93:

"Without entering further into the details of these and other applicable authorities the general conclusion to be derived from them is, as already stated, that ordinarily the principal of a trust fund, the right and title to which has vested in the beneficiary and which has become payable to him, is subject to attachment by his creditors, and that it is only when the donor or testator who created the trust has by clear language expressed the intention that the immunity from attachment or alienation is

to continue until actual payment of the principal to the beneficiary that such protection in transit will be accorded legal support. Analyzing the provisions in the will of Mrs. Sproul, there is no such clear language as would indicate an intention on her part to protect defendant's share of the principal of the trust estate after he had become entitled to receive it by attaining the age of thirty years. What the testatrix evidently desired was to safeguard from creditors the income of the beneficiaries during their formative years, not their shares of the principal payable to them upon their reaching what she regarded as the age of maturity. The shares were to be conveyed to them 'free and discharged of all *trusts*' (not free from the *debts and obligations* of the beneficiaries as was the provision, for example, in Riverside Trust Co. v. Twitchell, 342 Pa. 558, 20 A. 2d 768). That the receipts of the beneficiaries for the money paid them should be a full acquittance and discharge of the trustees was obviously intended merely to protect the trustees themselves against further claims. It would seem clear that as soon as the defendant's right to receive his share of the principal accrued it became his property and he could immediately thereupon have compelled its conveyance to him; the trust thenceforth was a dry trust and neither the defendant nor the trustees could thereafter defeat the rights of creditors with respect to the principal of the trust merely by allowing it, deliberately or otherwise, to remain in the trustees' hands. The rights of the creditors depended on defendant's interest in the property, not on his possession of it."

Applying the rules thus stated, we come to the conclusion that testator intended to extend the immunity of the fund in the case at bar until such time

as actual payments were made by the trustees to the beneficiary and that, therefore, the present fund is not subject to attachment.

In Sproul-Bolton, supra, the court made special note of the difference between principal and income. In the Lavenson Trust, item 6 clearly indicates that the spendthrift trust applies to both income and principal. In Sproul-Bolton, the language emphasized by the court to hold that that trust was subject to attachment was:

". . . 'free and discharged of all *trusts*' (not free from the *debts and obligations* of the beneficiaries as was the provision, for example, in Riverside Trust Co. v. Twitchell, 342 Pa. 558, 20 A. 2d 768)". 383 Pa. 93.

In the case at bar, the language "debts, liabilities, contracts, engagements, anticipations and alienations or those of any person" was expressly used, and it would seem to us that testator intended to give the broadest definition to the immunity. We are aided further in this interpretation by testator's language "all income and principal payable to any beneficiary under my will shall *to the fullest extent permitted by law* be paid free and clear of . . ."

Sproul-Bolton then continued to hold, at 383 Pa. 93, that the language, "the receipt of the beneficiary for the money paid them should be full acquittance and discharge of the trustees was obviously intended merely to protect the trustees themselves against further claims." We think that the language in the case at bar, "the *personal* receipt by such beneficiary shall be the sufficient and *only* discharge of my executors and trustees" lends corroboration to our interpretation that the beneficiaries' interests were to be protected to the fullest extent possible, and that if the fiduciaries

paid over the fund to anyone except the beneficiaries, the fiduciaries would be personally liable to the beneficiaries for such payment. We believe that this is consistent with the intention expressed by testator that only the *actual* receipt by the beneficiary would discharge the obligations of the fiduciaries.

Finally, in Sproul-Bolton, the Supreme Court said, at 383 Pa. 94: "The rights of the creditors depended on defendant's *interest* in the property, not on his possession of it." Item 6 of the Lavenson will specifically provided that it was "the *interest* of such beneficiary" which shall not be subject to anticipation or attachment.

We interpret this provision of the will as extending the immunity from attachment until actual receipt of the interest is made by the beneficiaries. See also Clark v. Clark, 411 Pa. 251, 191 A. 2d 417 (1963).

In view of the foregoing, we enter the following

### ORDER

And now, June 24, 1975, plaintiff's motion for summary judgment is denied, and the attachment is dissolved.