2013 COA 166

IN RE the ESTATE OF Sheldon
K. BEREN, deceased.

Miriam Beren, Plaintiff–Appellee,

and

Robert M. Goodyear, Jr., in his capacity as
Liquidating Trustee of the Beren Estate
Residuary Trust and the David I. Beren
Subtrust thereof, Garnishee–Appellee,

v.

David Beren, Defendant–Appellant.

Court of Appeals No. 12CA1912

Colorado Court of Appeals,
Div. IV.

December 5, 2013

---

* Sitting by assignment of the Chief Justice under
provisions of Colo. Const. art. VI, § 5(3), and

§ 24-51-1105, C.R.S. 2012.

City and County of Denver Probate Court Nos. 96PR401, 96PR100401, & 11PR2267, Honorable Elizabeth D. Leith, Judge.

The Moore Law Firm, P.C., Theresa M. Moore, Denver, Colorado, for Plaintiff–Appellee.

Carver Schwarz McNab Kamper & Forbes, LLC, Peter C. Forbes, Denver, Colorado, for Garnishee–Appellee.

Blain Myhre LLC, Blain D. Myhre, Englewood, Colorado, for Defendant–Appellant.

Opinion by JUDGE WEBB

¶ 1 This probate appeal involves two unresolved questions in Colorado: first, whether section 15–11–205(4), C.R.S.2013, of the Colorado Probate Code requires a surviving spouse to bring a separate action for contribution, before serving a writ of garnishment based on the contribution liability, although the probate court order has fixed the contribution liability of a person under that section; and, second, whether trust funds sub-

ject to a valid spendthrift provision may be garnished by a creditor of the beneficiary once distribution of those funds becomes mandatory, but before the funds have been distributed. We conclude that the probate court properly allowed garnishment of trust funds subject to mandatory distribution, without requiring the creditor to obtain a judgment in a separate contribution action. Therefore, we affirm the order allowing garnishment.

## I. Facts

¶ 2 This appeal involves the estate of Sheldon Beren, who died testate in 1996. The underlying probate proceedings and background are described in *In re Estate of Beren*, 2012 COA 203, —— P.3d ——, 2012 WL 5871034 (*Beren I* ). The parties to this appeal are one of the decedent's sons, David Beren; the estate's personal representative, in his capacity as liquidating trustee, Robert M. Goodyear, Jr.; and the decedent's surviving spouse, Mrs. Beren, who is the garnishor.

¶ 3 On September 2, 2010, the probate court approved Goodyear's petition for final settlement and distribution (Final Distribution Plan). The Final Distribution Plan called for the creation of liquidating trusts, including the Beren Estate Residuary Liquidating Trust Agreement (Liquidating Trust), because of Goodyear's concern over a contingent income tax liability of the estate.[1] Over David Beren's objections to the creation of the trusts, the probate court ordered Goodyear, as liquidating trustee, to distribute the estate assets in the "manner set forth" in the Final Distribution Plan (September 2 order).

## II. Contribution Liability

¶ 4 David Beren first contends Mrs. Beren could not garnish his interest in the Liquidating Trust to collect the contribution amounts that he owed her until she obtained a judgment establishing this liability in a separate contribution action. We conclude that because the September 2 order fixed this contribution liability, Mrs. Beren was not re-

quired to obtain such a judgment before she could garnish his interest.

## A. Background

¶ 5 In 1997, David Beren received a $1,000,000 bequest from the estate under the terms of a stipulation in which Mrs. Beren joined. The Final Distribution Plan approved in the September 2 order contained a schedule showing this bequest subject to contribution of $459,546.51 for funding Mrs. Beren's elective share. At that time, no separate judgment was entered.

¶ 6 In challenging the garnishment, David Beren argued that because the September 2 order did not constitute "an executable judgment," Mrs. Beren was required to obtain a judgment in a separate action before she could garnish any contribution amounts owed to her. Noting that *Beren I* was pending, the probate court declined to rule on this issue. However, the order enforcing the writ of garnishment directed that the register of actions reflect a "judgment in the sum of $459,456.57 against David Beren and in favor of [Mrs.] Beren entered as of September 2, 2010 . . . ."

¶ 7 This issue turns on interpreting two provisions of the Colorado Probate Code—sections 15–11–205(4) and 15–11–205(5), C.R.S.2013, which the parties have fully briefed. Thus, in lieu of remanding, we address it on appeal. *Cf. People v. Mumford*, 275 P.3d 667, 671 (Colo.App.2010) (addressing contention subject to de novo review, even though trial court did not address it).

## B. Analysis

¶ 8 Questions of statutory interpretation are reviewed de novo, looking first at the plain language of a statute to determine legislative intent. *Granite State Ins. Co. v. Ken Caryl Ranch Master Ass'n*, 183 P.3d 563, 567 (Colo.2008). If the meaning is clear, the statute is applied as written. *Wells Fargo Bank v. Kopfman*, 226 P.3d 1068, 1072 (Colo. 2010). When examining the wording of a

---

1. The Liquidating Trust assets were divided into seven subtrusts, one for each residuary beneficiary. David Beren is the sole beneficiary of the David I. Beren subtrust. Because this appeal only involves this subtrust, the parties referred to it generally as the "Liquidating Trust," as does this opinion.

statute, "[w]e do not presume that the legislature used language 'idly and with no intent that meaning should be given to its language.'" *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 597 (Colo.2005) (citation omitted). In addition, "we strive to interpret statutes in a manner that avoids rendering any provision superfluous." *Qwest Corp. v. Colo. Div. of Prop. Taxation*, 2013 CO 39, ¶ 16, 304 P.3d 217.

¶ 9 Under section 15–11–205(4):

After notice and hearing, the court shall determine the elective-share and ... *order its payment from the assets of the augmented estate or by contribution* as appears appropriate under sections 15–11–203 and 15–11–204. If it appears that a fund or property included in the augmented estate has not come into the possession of the personal representative, *or has been distributed by the personal representative,* the court nevertheless shall fix the liability of any person who has any interest in the fund or property or who has possession thereof, whether as trustee or otherwise....

(Emphasis added.) David Beren concedes that under this section, the probate court could "fix" his contribution liability for the $1,000,000 bequest.

¶ 10 But he argues that even if the September 2 order did so, the order was not an executable judgment. Rather, he asserts that under section 15–11–205(5), Mrs. Beren was required to bring a separate contribution action and obtain a judgment on which she could execute, before serving a writ of garnishment. In relevant part, this section provides: "[a]n order or judgment of the court *may* be enforced *as necessary* in suit for contribution or payment in *other courts* of this state or other jurisdictions." (Emphasis added.)

¶ 11 Contrary to David Beren's argument, the plain language of section 15–11–205(5) does not require a surviving spouse to bring a separate action after contribution liability has been fixed under section 15–11–205(4). Instead, it addresses only whether an order

or judgment on contribution liability "may" be enforced in "other courts of this state or other jurisdictions." Nothing in section 15–11–204(5) precludes a contribution order entered under section 15–11–204(4) from being effective as a judgment for purposes of supplemental proceedings such as garnishment, at least in the court that issued the order. But where enforcement involves a proceeding in a different court from the one that entered the order, a "suit for contribution" could be brought in such "other court[ ]" on either an "order or judgment."

¶ 12 David Beren's argument that this interpretation renders 15–11–204(5) superfluous fails because it ignores the qualifier "in other courts," as well as the term "may" and the phrase "as necessary." Use of such terms and phrases denotes discretion. *Cagle v. Mathers Family Trust*, 2013 CO 7, ¶ 31, 295 P.3d 460 ("The word 'may' denotes a grant of discretion and is usually permissive."); *Bishop v. Iowa State Bd. of Pub. Instruction*, 395 N.W.2d 888, 892 (Iowa 1986) ("'as necessary' language ... gave the Valley school board broad discretion"). This wording shows that the plain language of section 15–11–205(5) allows, but does not require, a surviving spouse to enforce an order or judgment on contribution in a separate proceeding.

¶ 13 Use of the phrase "order or judgment" also weighs against David Beren's position. If a judgment was required, as opposed to an order, then section 15–11–205(5) would not refer to an "order."

¶ 14 Thus, because the September 2 order fixed David Beren's contribution liability to Mrs. Beren at $459,546.51, no separate judgment was necessary for Mrs. Beren to enforce this liability through a supplemental proceeding in the probate court.

¶ 15 This conclusion also resolves David Beren's argument that the probate court erred by calculating postjudgment interest on his contribution liability from September 2. He argues only that the September 2 order did not constitute an executable judgment, which we have rejected.[2] Hence, that

2. David Beren does not otherwise explain how

the September 2 order failed to satisfy C.R.C.P.

order sets the date for calculating post-judgment interest.

### C. 1997 Stipulation

■ ¶ 16 Alternatively, David Beren argues that his bequest should not have been subject to contribution because in the 1997 stipulation, Mrs. Beren did not reserve any right to seek contribution. *Beren I* forecloses this argument.

¶ 17 David Beren raised this argument in *Beren I*, but the division declined to address it. The division explained that while David Beren had "made numerous arguments in his objections" to the September 2 order in the probate court, his mere cross-reference to an earlier filing failed to alert the court to his assertion that the stipulation precluded contribution. *Beren I*, ¶¶ 78–80. Thus, David Beren cannot raise this argument again. *See Loveland Essential Grp., LLC v. Grommon Farms, Inc.*, 2012 COA 22, ¶ 14, 318 P.3d 6 (Colo.App.2012) (quoting *Argus Real Estate, Inc. v. E–470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo.2005) ("Claim preclusion (formerly known as res judicata) bars 'relitigation of matters that have already been decided [in a prior proceeding] as well as matters that could have been raised in a prior proceeding but were not.'" (footnote omitted))).

### D. Attorney Fees

■ ¶ 18 Mrs. Beren seeks a portion of her appellate attorney fees under section 13–17–102, C.R.S.2013, because David Beren's assertion that the 1997 stipulation precluded contribution liability lacked substantial justi-fication. We agree that she is entitled to recover fees and remand to determine that amount.

¶ 19 Under section 13–17–102(2), "in any civil action . . . commenced or appealed," a court shall award attorney fees "against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification."

¶ 20 During the garnishment hearing, David Beren questioned whether the 1997 stipulation precluded Mrs. Beren from subjecting his bequest to contribution. But when he told the probate court that he had also raised this issue on appeal in *Beren I*, the probate court declined to address it. By the time David Beren filed his opening brief in March 2013, *Beren I* had been announced. Thus, David Beren knew that the division had rejected his stipulation argument. David Beren did not seek certiorari on this aspect of *Beren I*.[3]

¶ 21 Under these circumstances, continuing to assert in this appeal that the 1997 stipulation precluded contribution from his $1,000,000 bequest lacked substantial justification. *See Spring Creek Ranchers Ass'n, Inc. v. McNichols*, 165 P.3d 244, 246 (Colo. 2007) ("[T]he record adequately supports the trial court's finding that the Individual Homeowners and their attorney continued to relitigate a settled issue against the water court's warning."); *Wood Bros. Homes, Inc. v. Howard*, 862 P.2d 925, 929 (Colo.1993) ("While we grant wide latitude to counsel in pursuing legal theories, we cannot counte-

---

58, which requires that a judgment be written, dated, signed by the court, and entered by the clerk in the registry of actions.

**3.** The supreme court granted certiorari on September 9, 2013, to address the following issues: Whether the court of appeals erred by holding, as a matter of law, that the Probate Code displaces the authority of the probate court to award an equitable adjustment supplementing a spouse's elective share of the decedent's estate.

Whether the court of appeals created a grave injustice by invalidating the equitable adjustment in isolation and ordering the petitioner, Miriam Beren, to return $24.5 million, plus interest, completely disregarding that the equitable award was integral to administering the estate over the course of 15 years.

Whether the court of appeals' conclusion that interest on the repayment of the equitable adjustment cannot be awarded under a statute but instead only on restitution principles (1) conflicts with *Rodgers v. Colorado Department of Human Services*, 39 P.3d 1232 (Colo.App.2001), and *Tuscany, LLC v. Western States Excavating Pipe & Boring, LLC*, 128 P.3d 274 (Colo.App.2005), both of which awarded statutory interest on funds that had to be re-paid following reversal of judgments on appeal, and (2) misinterprets section 5–12–106 C.R.S. (2012), which requires payment of statutory interest on judgments reversed on appeal.

2013 WL 4807588.

nance attempts to relitigate claims that previously have been conclusively determined on appeal in the same case. Such active litigation of settled issues is presumed to be frivolous. *See* § 13–17–102(4) . . . .").

¶ 22 Therefore, we exercise our discretion under C.A.R. 39.5 and remand for the trial court to determine and award Mrs. Beren the amount of fees she incurred in responding to this argument.

## III. Garnishment

¶ 23 David Beren next contends that because the Liquidating Trust Agreement (Agreement) contained a spendthrift provision, the probate court erred by allowing his interest in the Liquidating Trust to be garnished before any distribution to him. We conclude that this provision did not protect funds which Goodyear was required to distribute under the Agreement, although distribution had not yet occurred.

## A. Background

¶ 24 Goodyear's Final Distribution Plan explained that because "significant contingent tax liabilities" existed, the beneficiaries' net assets would be distributed into liquidating trusts to pay any such liabilities that came due. But "if no claim is made concerning the contingent tax liabilities prior to May 25, 2011 (the expiration of the statute of limitations for those liabilities)," the Final Distribution Plan stated that "the assets of the trust shall be distributed to the beneficiaries no later than June 30, 2011, subject to the retention of a reasonable reserve with respect to any remaining claims or reasonably anticipated expenses."

¶ 25 Similarly, the Agreement provided that "as soon as is reasonably practical" after "all applicable statutes of limitations have expired as to [contingent tax liabilities] . . . the Liquidating Trustee *shall distribute* . . . any then remaining balance of such Beneficiary's separate share . . . ." (Emphasis added.)

¶ 26 After the statute of limitations had run on the contingent tax liabilities, Goodyear told the beneficiaries that he planned to make an initial distribution of assets from the

liquidating trusts to each beneficiary, conditioned on obtaining release from each of them. But before any distributions were made, Mrs. Beren served a writ of garnishment on Goodyear requiring him to pay over to her any personal property belonging to David Beren, including all sums payable to him from the Liquidated Trust, up to the amount of his contribution liability from the September 2 order, plus interest. David Beren filed a claim of exemption, relying on the spendthrift provision in the Agreement. That provision provided:

> [N]or shall any part of the Trust Assets, including income, be liable for the debts or obligations, including alimony or maintenance, of any Beneficiary or be subject to attachment, *garnishment,* execution, creditor's bill or other legal or equitable process.

(Emphasis added.)

¶ 27 Simultaneously, David Beren instructed Goodyear not to pay any sums to Mrs. Beren. He also asserted that because Goodyear "cannot retain the funds in the [Liquidating Trust], nor are those funds subject to garnishment," all such funds "must be paid over to [him]." Goodyear petitioned the probate court to declare whether funds from the Liquidating Trust were subject to garnishment.

¶ 28 The probate court held a hearing on the writ of garnishment, the claim of exemption, and the declaratory relief petition. It concluded that the spendthrift provision was invalid and therefore the trust funds of David Beren were not shielded from garnishment. Alternatively, it held that even if the provision was valid, the trust funds could be garnished "once [Goodyear] exercised his discretion to make a distribution." Finding that this had occurred, the court ordered Goodyear to pay the full amount of David Beren's contribution liability plus interest to Mrs. Beren.

## B. Analysis

¶ 29 Whether a valid spendthrift provision protects trust funds from garnishment is a question of law subject to de novo review. *See Casey v. Colo. Higher Educ. Ins. Benefits Alliance Trust,* 2012 COA 134, ¶ 20,

310 P.3d 196 ("[I]nterpretation of the trust agreements is [ ] an issue of law that we review de novo.").

■ ¶ 30 Spendthrift trusts are valid and enforceable in Colorado. *In re Cohen,* 8 P.3d 429, 430 n. 1 (Colo.1999); *see In re Portner,* 109 B.R. 977, 987 (Bkrtcy.D.Colo. 1989) (In Colorado, "spendthrift trusts are determined exclusively by common law because there are no statutory provisions regulating their existence."). Such trusts "provide a fund for the maintenance of the beneficiary, and at the same time ... secure it against his improvidence or incapacity." *Portner,* 109 B.R. at 987.

■ ¶ 31 Funds under the discretionary control of a trustee subject to a spendthrift provision cannot be garnished. *Brasser v. Hutchison,* 37 Colo.App. 528, 531, 549 P.2d 801, 803 (1976). But once such funds have been distributed, they are within the reach of creditors. *See generally* Restatement (Third) of Trusts § 58 cmt. d(2) (2003) ("After the income or principal of a spendthrift trust has been distributed to a beneficiary ... it can be reached by creditors."). The intermediate position—whether a spendthrift provision continues to protect trust funds where distribution is mandatory based on the happening of some event, although distribution has not yet occurred—is unresolved in Colorado.

¶ 32 Here, once the statute of limitations on contingent tax liabilities had run, the Agreement required that Goodyear "shall distribute" the "remaining balance of such Beneficiary's separate share." Consistent with this requirement, the probate court found that Goodyear had "properly exercised his power to determine a distribution out of the [Liquidating Trust] would be made and then withheld from David Beren and paid to Mrs. Beren pursuant to the writ." [4]

¶ 33 David Beren does not dispute that the limitations period had expired. Instead, he relies on two Colorado cases to support his argument that the spendthrift provision continued to protect his trust funds from garnishment until distribution occurred: *Snyder v. O'Conner,* 102 Colo. 567, 81 P.2d 773 (1938), and *Univ. Nat'l Bank v. Rhoadarmer,* 827 P.2d 561 (Colo.App.1991). Neither case supports his argument.

¶ 34 In *Snyder,* the supreme court upheld a spendthrift provision against a creditor's claims where the trust provided a minor child with income from the trust once he attained his majority and the trust principal ten years after the testator's death. The court explained that "[u]ntil the county court *orders the trust fund distributed,* the property is in a real sense in custodia legis." 102 Colo. at 570, 81 P.2d at 774 (emphasis added). And whether the minor "will be among the then surviving beneficiaries who are to share in the corpus of the trust" is "wholly uncertain." *Id.*

The court concluded:

The creditor of a testamentary beneficiary whose interest is so thoroughly contingent as [minor child's] in the case at bar cannot thus project into a distant future a claim which such creditor may by reasonable diligence assert in a recognized proceeding *when and if uncertainty becomes certainty as the designated period is about to end.*

*Id.* at 570, 81 P.2d at 774–75 (emphasis added). In so concluding, the court recognized that a creditor may assert a claim once "uncertainty becomes certainty" and "the designated period is about to end." *Id.* at 570, 81 P.2d at 775. But it did not hold that distribution must occur before the creditor could assert a claim.

¶ 35 In *Rhoadarmer,* 827 P.2d at 564, the division concluded that where the beneficiary had not yet exercised a power of appointment, a spendthrift provision protected trust property from garnishment. There, the beneficiary had a right "to withdraw annually from the Trust corpus, upon written request, up to $5,000 or 5% of the current market value." *Id.* at 562. The division explained,

---

4. David Beren argues that Goodyear was only "contemplating" a distribution, a position in which Goodyear joins on appeal. However, our conclusion that the distribution was mandatory avoids resolving this question. Further, neither David Beren nor Goodyear asserts that Goodyear's discretion to reserve assets sufficient to cover outstanding liabilities would have precluded a distribution exceeding the contribution liability.

however, that "property subject to a donee's general power of appointment is available to [ ] creditors only if the power is exercised." *Id.* at 563 (citing G. Bogert, Trusts & Trustees § 233 (rev.2d ed.1977)). And because the beneficiary could not be compelled to exercise her power of appointment, until she did so "the trustee retain[ed] absolute control and benefit of the Trust corpus." *Id.* at 563–64. Like *Snyder, Rhoadarmer* did not address whether trust funds subject to mandatory distribution must be distributed before they could be garnished.

¶ 36 As to this issue, 2A A. Scott & W. Fratcher, Scott on Trusts § 153, p. 133 (4th ed. 1987), explains:

> [W]here by the terms of the trust a beneficiary is entitled at some future time to receive the principal of the trust estate *and that time has arrived* but the trustee has not yet paid the principal to him, a restraint on the alienation of his interest, even if valid up to that time, *ceases to be effective.*

(Emphasis added.) This view is consistent with the Restatement (Second) of Trusts § 153(2)—"If the beneficiary is entitled to have the principal conveyed to him immediately, a restraint on the voluntary or involuntary transfer of his interest in the principal is invalid." Cases from other jurisdictions are in accord[5], although many states have addressed the question legislatively by adopting the Uniform Trust Code.[6]

¶ 37 Despite some contrary authority[7], garnishment principles support the view that "the rights of the creditors [should] depend upon the beneficiary's interest in the property, not on the actual distribution of the fund." *Brent,* 537 A.2d at 231. Under C.R.C.P.103, section 2(c), "indebtedness ... owed to ... the judgment debtor ... shall be subject to the process of garnishment." In other words, "[i]f the debtor could bring an immediate action to recover the debt from the garnishee, then the debt is due and payable within the meaning of the section." *Anderson Boneless Beef, Inc. v. Sunshine Health Care Ctr., Inc.,* 852 P.2d 1340, 1343 (Colo.App.1993). And one of the purposes of garnishment is to allow creditors to reach assets of the judgment debtor in the hands of third parties by "preventing their loss or dissipation." *TCF Equip. Fin., Inc. v. Pub. Tr. for City & Cnty. of Denver,* 2013 COA 8, ¶ 8, 297 P.3d 1048.

¶ 38 Requiring the creditor of a beneficiary to await distribution by a trustee who must distribute frustrates these principles in two ways. First, because the trustee has no choice, the funds subject to mandatory distribution are "owed to" the beneficiary, who could sue to compel distribution. Second, if the creditor had to wait until the funds came under the control of the beneficiary, the funds might be placed beyond the reach of the creditor before a writ of garnishment could be served.[8]

---

5. *See, e.g., Miller v. Kresser,* 34 So.3d 172, 176 (Fla.Dist.Ct.App.2010) ("It is only when a beneficiary has received distributions from the trust, or has the express right to receive distributions from the trust, that the creditor may reach those distributions."); *Brent v. State of Md. Cent. Collection Unit,* 311 Md. 626, 537 A.2d 227, 231 (1988) ("the spendthrift trust terminates when the beneficiary satisfies the contingency specified in the trust. From that point in time forward, the spendthrift trust is invalid as against the beneficiary's creditors"); *Lipsitt v. Sweeney,* 317 Mass. 706, 59 N.E.2d 465 (1945) (funds not subject to spendthrift provision where "the time for distribution arrived at the expiration of five years" and "it was the duty of [the trustee] to pay the several distributive shares to the distributees"); *Sproul–Bolton v. Sproul–Bolton,* 383 Pa. 85, 117 A.2d 688, 692 (1955) ("ordinarily the principal of a trust fund, the right and title to which has vested in the beneficiary and which

has become payable to him, is subject to attachment by his creditors").

6. Unif. Trust Code § 506.

7. *See Williams v. Frisbee,* 419 S.W.2d 99, 102 (Mo.1967) ("assets of the trust should not be reached by garnishment, and should not be available to creditors of the beneficiary until actually paid"); *In re Manley's Estate,* 112 Vt. 314, 24 A.2d 357, 360 (1942) (garnishment not allowed where terms of trust "unequivocally directed [trustee] to deliver the fund to the claimant at the specified time").

8. We decline to address the exception where a trust contains "clear language" expressing "the intention that the immunity from attachment or alienation is to continue until actual payment of the principal to the beneficiary." *Sproul–Bolton,* 117 A.2d at 692. Here, no such language appears in the Agreement. *See Brasser v. Hutchi-*

¶ 39 Applying this approach here, the Agreement required distribution to be made after the statute of limitations had run on the estate's contingent tax liabilities, which is undisputed. Goodyear retained discretion to reserve only funds needed for unresolved claims and expenses, or as otherwise required by law. Neither Goodyear nor David Beren argued below that any such claims, expenses, or legal restrictions precluded distribution, when the writ of garnishment was served. Thus, because the spendthrift provision, even assuming its validity, no longer protected those trust funds that had become subject to mandatory distribution, the trial court properly allowed garnishment of those funds.

## C. Release

¶ 40 Finally, David Beren argues that his trust funds were not subject to mandatory distribution because he refused to sign a release required by Goodyear. We are not persuaded.

¶ 41 The Agreement gave Goodyear authority to "condition any distribution upon the ... receipt from the beneficiary" of a release. David Beren refused to sign the release presented by Goodyear. Below, he argued that the "release that is proposed has not been in a form that's acceptable," but did not assert that the request for a release exceeded Goodyear's authority under the Agreement.

¶ 42 David Beren cites no Colorado case, nor have we found one, holding that if a beneficiary fails to satisfy a condition solely within the beneficiary's control, trust funds otherwise subject to mandatory distribution remain protected by a spendthrift provision. To the contrary, as explained in E.H. Griswold, Spendthrift Trusts § 447, p. 528 (2d ed. 1947):

> Property may be given on trust for a person subject to a condition precedent which is entirely dependent on his own will.

son, 37 Colo.App. 528, 529, 549 P.2d 801, 802 (1976) (spendthrift provision required "actual payment" to beneficiary).

9. We express no opinion on the outcome if a beneficiary refused to satisfy an unreasonable

Thus the trustee may be directed to hold the property until the beneficiary demands it. *Such a condition is quite illusory.* It is really no condition at all, and the courts have rightly held in many cases that the trust property is subject to the claims of the creditors of the beneficiary.

(Emphasis added.) A condition solely within the beneficiary's control is analogous to a trust which has been created by the beneficiary. In *Cohen,* 8 P.3d at 433, the supreme court explained that such trusts are subject to the claims of creditors notwithstanding a spendthrift provision.[9]

¶ 43 Accordingly, we conclude that the probate court did not err by allowing Mrs. Beren to garnish David Beren's interest in the Liquidating Trust.

## IV. Future Distributions

¶ 44 Goodyear's answer brief contends the probate court erred by holding "any future distributions ... may be attached upon the proper service of a new Writ of Garnishment." But Goodyear did not file a separate notice of appeal, and David Beren did not make this argument in his opening brief. Accordingly, we decline to address it. *See Schelly v. Indus. Claim Appeals Office,* 961 P.2d 547, 550 (Colo.App.1997) (declining to address issue raised in answer brief where no notice of cross-appeal filed).

## V. *Beren I*

¶ 45 Finally, David Beren contends his contribution liability should be vacated and the garnished funds returned because the division in *Beren I* reversed the $24.5 million equitable adjustment for Mrs. Beren and she has already received the amount of her elective share. We also decline to address this contention, for two reasons.

¶ 46 First, the supreme court has granted certiorari on the question of whether the *Beren I* division erred by invalidating the equitable adjustment. Thus, this issue is not

condition imposed on distribution. David Beren did not argue below that the release that Goodyear requested was effectively beyond his control because it was unreasonable.

yet final. *See Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 22 (Colo.App.2010) ("[A] judgment is not final for purposes of issue preclusion until certiorari has been resolved both in the Colorado Supreme Court and the United States Supreme Court."). Second, notwithstanding the equitable award, factual issues on the amount of Mrs. Beren's elective share and payment of that share are within the province of the probate court.

¶ 47 The order is affirmed and the case is remanded for further proceedings on attorney fees.

JUDGE BERNARD and JUDGE MÁRQUEZ * concur.